377 N.E.2d 1381 (1977)
SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, Appellant (Defendant below),
v.
Lynn S. STEINMETZ and Marjorie Steinmetz, Appellees (Plaintiffs below).
No. 1-577A108.
Court of Appeals of Indiana, First District.
July 12, 1977.
Rehearing Denied September 1, 1978.
*1382 Fred P. Bamberger, Robert H. Hahn, Robert T. Bodkin, Evansville, for appellant; Bamberger, Foreman, Oswald & Hahn, Evansville, of counsel.
Gerald G. Fuchs, Evansville, for appellee.
LYBROOK, Presiding Judge.
Plaintiffs-appellees Lynn and Marjorie Steinmetz (Steinmetz) filed a complaint for damages for personal injuries suffered by Lynn Steinmetz and the consequent loss of his services to his wife, Marjorie. The injuries were allegedly caused by the negligence of defendant-appellant Southern Indiana Gas & Electric Company (Southern Indiana). After a jury trial, a verdict was rendered in favor of Steinmetz and judgment entered thereon. Southern Indiana now appeals from a denial of its motion to correct errors.
We reverse.
The only issue we need to consider in this case is whether the trial court erred by refusing to give Southern Indiana's tendered instruction number eight.
On April 21, 1975, Lynn Steinmetz was employed as an operating engineer by Jebco Construction Company, which is in the business of sewer construction. Steinmetz was part of a crew that was laying sewer pipe underneath a highway near a wooded area. The pipes were each approximately twenty feet in length and eight hundred to nine hundred pounds in weight, and it was therefore necessary for the crew to use a large crane to lift the pipes into the trench. As the crane was lifting the last pipe into place, the boom came into contact with a 12,500 volt distribution line owned and maintained by Southern Indiana. As a result of the ensuing shock, Steinmetz received severe burns on his hand and foot.
The distribution lines at the location of the accident consisted of three energized lines located approximately 31 feet above the ground and one neutral wire (which was not energized) that was approximately twenty-three feet above the ground. None of the lines were insulated with any covering or coating.
Testimony elicited at trial revealed that the electric lines were covered by the branches and foliage of nearby trees. The manager of Jebco Construction Company, *1383 Bruce Biggerstaff, testified that although he had representatives of all utilities inspect the construction site and construction plans, including a representative of Southern Indiana, no one noticed the lines in question until after the accident. Biggerstaff also testified that a Southern Indiana employee, Fred Bowman, had warned him of other power lines in the area but not of the lines which caused the injury to Steinmetz. This was contradicted in part by Bowman, who stated that his only function at the construction site was to locate buried pipelines and cables.
At the close of the evidence, the case was submitted to the jury on three bases of negligence:
1. Southern Indiana negligently failed to insulate its power lines;
2. Southern Indiana negligently failed to trim the trees and branches which had grown around the lines;
3. Southern Indiana failed to give any warning of the existence of the lines.
No instructions were given to the jury to explain or define the concept of insulation or isolation of electric power lines. Southern Indiana argued that it had no duty to insulate the wires with any type of nonconducting covering if the lines were properly isolated and it tendered the following instruction which was refused by the trial court:
"Defendant's tendered instruction number 8:
You are instructed that at the time and place at issue herein the defendant was under no duty to insulate the electrical wires in question with any type of insulation, coating, cover or guard provided that said wires were safely isolated. Further, the defendant was under no duty to mark, post, warn or do any other thing to indicate the presence of the electric line to the plaintiff unless it knew, or reasonably should have known, that there was a danger of plaintiff Lynn S. Steinmetz coming in contact with the line while engaged in normal activity on the ground.
You are further instructed that the defendant cannot be charged with knowledge of danger of plaintiff Lynn S. Steinmetz coming in contact with the line where such line is elevated to such a height that a person engaged in normal activities on the ground would not be endangered by the presence of the line."
As pointed out by Southern Indiana, it is the duty of the trial court to instruct the jury as to the law applicable to the issues and facts of the case. Reversible error is committed when the trial court refuses to give a tendered instruction that is a correct statement of law, is applicable to the facts of the case, and is not adequately covered by the other instructions which are given. Wells v. Gibson Coal Company (1976), Ind. App., 352 N.E.2d 838; Frankfort v. Owens (1976), Ind. App., 358 N.E.2d 184.
In this state, any company which engages in the distribution of electricity has a common law duty to exercise reasonable care to keep its power lines safely insulated by an effective coating or covering in places where the general public may come in contact with those lines. Petroski v. Northern Indiana Public Service Co. (1976), Ind. App., 354 N.E.2d 736. As a general rule, however, an insulating covering is not required when the lines are sufficiently isolated so that the general public could not reasonably be expected to come in contact with them. Capitol Airways, Inc. v. Indianapolis Power & Light Co. (1939), 215 Ind. 462, 18 N.E.2d 776; Denneau v. Indiana & Michigan Electric Co. (1971), 150 Ind. App. 615, 277 N.E.2d 8. The term "general public" in this sense means those persons who could reasonably be anticipated to be dangerously close to the lines, as was stated in Jakob v. Gary Railways, Inc. (1947), 118 Ind. App. 13, 70 N.E.2d 753:
"The word `public,' as used in the statute, means the general public  a great multitude of persons who would, in the course of daily events, be exposed to danger by the presence of an uninsulated wire carrying a dangerous voltage of electricity. The word has no reference to an individual whose particular employment *1384 requires him to work in the proximity of a live wire with which there would be no likelihood of his coming in contact except for such employment. The exposure must be common to the concourse of people who make up the general public in any locality." 70 N.E.2d at 754.
This means, then, that an electric utility will not generally be required to insulate its wires with a covering or coating to protect only those persons who might come into contact with power lines in the course of their employment as electric utility employees, Denneau v. Indiana & Michigan Electric Co., supra, or while cleaning and repairing a sign near power lines, Jakob v. Gary Railways, Inc., supra, or while installing a TV antenna on private property. Northern Indiana Public Service Co. v. Howard (1957), 127 Ind. App. 488, 139 N.E.2d 558. An exception is made to this rule, however, when the utility knows or has knowledge of such facts from which it should know that a particular segment of the population will be regularly exposed to uninsulated wires for one reason or another, particularly when children are involved. Petroski v. Northern Indiana Public Service Co., supra (boy climbing tree); Wise v. Southern Indiana Gas & Electric Co. (1941), 109 Ind. App. 681, 34 N.E.2d 975 (boy climbing bridge with sagging power line nearby); Fort Wayne and Northern Indiana Traction Company v. Stark (1920), 74 Ind. App. 669, 127 N.E. 460 (boy climbing tree).
In the present case, it is undisputed that although Southern Indiana's power lines were not covered by an insulating covering, the energized lines were elevated to a height of over 30 feet. There was little, if any, evidence of any facts which reasonably should have put Southern Indiana on notice that the general public might come into contact with its lines at the place of the accident with any regularity. Other evidence was presented at trial to show that the electric utility industry as a whole did not insulate such lines as a regular practice and that the failure to cover the lines with an insulating covering did not violate any safety standards of the industry. Southern Indiana's instruction, while not a model, was a correct statement of law, was not adequately covered by any other instructions and was appropriate under the evidence in this case. Therefore it was error for the trial court to refuse to give Southern Indiana's tendered instruction number eight and this action must be reversed and remanded for a new trial.
Judgment reversed.
LOWDERMILK and ROBERTSON, JJ., concur.