Miriam BUTLER, Individually and as personal representative of the Estate of James E. Butler, Appellants (Plaintiffs Below),

v.

CITY OF PERU and Peru Municipal Utilities, Appellees (Defendants Below).

No. 52S02–0002–CV–117.

Supreme Court of Indiana.

Aug. 14, 2000.

Donald J. Tribbett, Logansport, Indiana, Attorney for Appellants.

Thomas J. Trauring Kokomo, Indiana, Attorney for Appellees.

1. Peru Municipal Utilities is a separate agency of the City of Peru, created by Indiana Code § 36–4–9–4. For purposes of this opin-

## ON PETITION TO TRANSFER

BOEHM, Justice.

We grant transfer in this case to clarify the phrase "user or consumer" in the Products Liability Act and to reiterate the correct standard for summary judgment under Trial Rule 56.

### Factual and Procedural Background

James E. Butler was employed as a maintenance worker for Peru Community School Corporation. On September 23, 1993, Butler was electrocuted trying to restore power to an electrical outlet near the Peru High School baseball field. The power source to the outlet was an electrical box located within a fenced-in area containing one of the field's lighting towers. The fenced-in area contained equipment carrying several levels of electrical power ranging from 110 to 7200 volts. Butler and a co-worker had been unable to identify the cause of the outlet's power outage, but had determined that the box that served the outlet had no power. Butler used a pocket tester rated for 600 volts to check the power supply to the other equipment in the fenced-in area. He was killed when he came into contact with a 7200–volt line.

The school and environs are in the service area of Peru Municipal Utilities, which is operated by the City of Peru. Butler's wife and his estate filed suit against the City and Peru Municipal Utilities (collectively Peru)[1] alleging ten counts of negligence based on "the close proximity of high power lines to low power lines and the lack of any proper warning regarding, or insulation of, the high power lines." The Butlers alleged, and Peru denied, that Peru owned, operated, or maintained the electrical transmission system at the baseball diamond. Peru filed a motion for summary judgment on November 18, 1996. On February 10, 1998, the trial court granted Peru's motion for summary judg-

ion, both the City of Peru and Peru Municipal Utilities will be referred to simply as "Peru."

ment on the ground that Peru did not own, maintain, or control the allegedly defective equipment. The Court of Appeals affirmed the trial court. *See Butler v. City of Peru,* 714 N.E.2d 264 (Ind.Ct.App.1999).

### Standard of Review

On appeal the standard of review of a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See* Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 983–84 (Ind.1998). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *See Shell Oil,* 705 N.E.2d at 983–84; *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). The review of a summary judgment motion is limited to those materials designated to the trial court. *See* T.R. 56(H); *see also Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind. 1993). We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court. *Estate of Shebel ex rel. Shebel v. Yaskawa Elec. Am., Inc.,* 713 N.E.2d 275, 277 (Ind.1999).

### I. Summary Judgment as to the Negligence Claim

#### A. *Summary Judgment Standard*

The Butlers first claim that the trial court and Court of Appeals misapplied Indiana Trial Rule 56 and Indiana summary judgment law. Trial Rule 56(C) provides that a summary judgment movant must show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The movant must designate sufficient evidence to foreclose the nonmovant's reasonable inferences and eliminate any genuine factual issues. Once the movant has put forward evidence to establish this, the burden shifts to the nonmovant to make a showing sufficient to establish the existence of a genuine issue for trial on each challenged element of the cause of action. *See Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 281 (Ind. 1994); *see also* Ind. Trial Rule 56(E); *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 984 (Ind.1998).

It is well established that the designated evidence on a summary judgment motion is to be evaluated in the light most favorable to the nonmoving party. *See, e.g., Shell Oil,* 705 N.E.2d at 984; *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996); *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind: 1991). Although both courts stated the correct standard, the Butlers claim that the courts did not in fact apply that standard in making their rulings.

#### B. *Disputed and Undisputed Facts*

Several facts are undisputed. Lighting for the field was installed around 1970. Peru owns, maintains, and controls the electrical transmission system up to a pole on the border of the School's property. The electricity travels underground from the pole to a transmission system that serves the baseball field and the light towers. The School owns both the electrical transmission system itself and the property containing the wiring from the riser pole to the electrical transmission system.

The dispute focuses on the Butlers' claim that Peru helped design the electrical system and asserted control over it by maintaining, monitoring, and repairing it. The trial court and Court of Appeals determined that Peru had only a minor role in the construction of the electrical facilities and that the School owned the electrical system that electrocuted Butler. *See Butler,* 714 N.E.2d at 266–67, 269. Peru contends that the items the Butlers identified do not establish that Peru maintained the facility in question and the Butlers point to no direct evidence that this occurred. However, at this summary judg-

ment stage it is Peru's burden to foreclose the reasonable inferences raised by the Butlers' designated evidence as to the design, maintenance, or control of the system.

The Butlers point to evidence that tends to establish that Peru designed and participated in the construction of the defective equipment. This includes a construction drawing of the baseball field electrical system prepared for Peru, not the School. It also includes evidence that Peru determined the height and location of the equipment and necessary clearances for the system, furnished and installed the connections where Butler was injured, and conducted inspections and issued a letter refusing to supply power if a safety problem was not corrected.

The Butlers also point to evidence that Peru generally maintained and repaired equipment it installed if it retained ownership of the equipment. It seems to be undisputed that Peru does not own the equipment involved in the accident, but that fact does not establish that Peru had no role in designing or monitoring the baseball field equipment it did not own.

We agree with the Butlers that this evidence is minimally sufficient to preserve a genuine issue of material fact as to Peru's design or exercise of control over or maintenance of the equipment. This is not the case, as in *Northern Indiana Public Service Co. v. East Chicago Sanitary District,* 590 N.E.2d 1067, 1073 (Ind.Ct.App. 1992), where the plaintiff failed to present any evidence to support its contention that the utility designed, owned, or controlled the power lines on another's property.

### C. *Duty*

In its complaint, the Butlers alleged ten counts of negligence. The trial court granted summary judgment for Peru on all counts, in part on the basis that, as a matter of law, Peru owed Butler no duty and accordingly none was breached. On appeal, the Butlers contend that the trial court erred by: (1) finding that Peru had

no duty because the power lines were owned and operated by the School, (2) finding that Peru had no duty to insulate the lines, (3) finding that Peru had no duty based on actual knowledge of an imminent danger to Butler, and (4) finding no gratuitous assumption of duty by Peru. The Court of Appeals affirmed the trial court's grant of summary judgment.

The Butlers claim that the trial court erred by finding that Peru owed Butler no duty because the power lines in question were owned by the School. It is true that a utility company generally owes no duty to those injured by power lines owned by its customers. *See NIPSCO,* 590 N.E.2d at 1073; *Caldwell v. Alley,* 70 Ind.App. 313, 321, 123 N.E. 432, 434 (1919). However, in this case, it is not entirely clear that Peru did not design or maintain some supervision and control over these lines. Viewing the evidence in the light most favorable to the Butlers, there is at least some support for the argument that Peru designed the electrical system and monitored it. This includes construction drawings, Peru's inspections and refusal to supply power until safety violations were fixed, and Peru's practice of repairing equipment it installed. This evidence could lead a jury to conclude that Peru had either "the right or power of control[ ] and the opportunity to exercise it," *Southern Ind. Gas & Elec. Co. v. Indiana Ins. Co.,* 178 Ind.App. 505, 511, 383 N.E.2d 387, 391 (1978) (quoting W. Prosser, *Handbook of the Law of Torts* § 39 (4th ed.1971)), or negligently designed the configuration that produced the injury.

The Butlers also claim that the trial court erred in determining that Peru had no duty to insulate the power lines because they were not accessible to the public. Generally, electric utilities have no duty to insulate even those lines that they own if the general public is not exposed to the lines and the utility has no knowledge of a particular segment of the population

that is regularly exposed to the uninsulated lines. *See NIPSCO*, 590 N.E.2d at 1072. Stated another way, the utility company has a duty to insulate its lines in places where the general public comes into contact with them, but not where the only people who come into contact with them are utility employees or others charged with knowledge of necessary safety precautions. *Id.* In this case, there is evidence that Peru knew the baseball field events required a range of individuals to enter the fenced-in area to turn on the field lights and thus become exposed to the lines. These included coaches and other members of the public who were not utility workers and could not otherwise be expected to be familiar with electrical lines. To the extent, if any, that Peru was involved in the design or maintenance of the arrangement, it had a duty to those persons not to negligently fail to take adequate safety precautions.

The Butlers also contend that Peru had a duty based on its actual knowledge of imminent danger and that Peru gratuitously assumed a duty towards Butler. We agree with trial court and Court of Appeals that summary judgment is appropriate on these two theories. An electric utility may be liable for "actual knowledge of the imminent danger caused by defects in wiring." *Id.* at 1073. In *NIPSCO*, the court held that knowledge of construction activity in the area was not enough. Rather, NIPSCO needed to know or be "on notice of crane activity near the power lines on September 15, 1987." *Id.* at 1074 n. 2. We agree with the Court of Appeals that because "the Butlers acknowledge that [Peru] was not notified about the problem with the malfunctioning 110–volt outlet," there is no question of fact as to whether Peru had actual knowledge of the circumstances leading to Butler's accident and a corresponding duty to prevent it. *Butler*, 714 N.E.2d at 270.

A duty may also be imposed: upon one who by affirmative conduct ... assumes to act, even gratuitously, for

another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully.

*NIPSCO*, 590 N.E.2d at 1074 (quoting *Lather v. Berg*, 519 N.E.2d 755, 766 (Ind. Ct.App.1988)). The Butlers argue that Peru actively undertook the School's duty of providing a safe workplace for Butler based on evidence that Peru located underground lines upon request, repaired broken lines upon request, and generally would not provide power to electrical systems if the systems did not meet Peru's specifications. We agree with the Court of Appeals that "perform[ing] the indicated services only after the School requested that [Peru] do so ... is not sufficient to support the conclusion that [Peru] gratuitously assumed a duty to provide a safe workplace for James Butler" and that the evidence concerning Peru's habits was "too general in nature to impose a duty under the theory of gratuitous assumption of duty." *Butler*, 714 N.E.2d at 270.

Because Peru is a municipality, this case is governed by the Indiana Tort Claims Act and contributory negligence is a defense. Peru claims that even if it has a duty to Butler, Butler was contributorily negligent. Contributory negligence is generally a question of fact, and, as such, is not an appropriate matter for summary judgment if there are conflicting factual inferences. *See Jones v. Gleim*, 468 N.E.2d 205, 207 (Ind.1984); *see also Happner v. State*, 699 N.E.2d 1200, 1206 (Ind. Ct.App.1998). In this case, the trial court and the Court of Appeals determined that Butler was climbing the tower when he was electrocuted. An eyewitness, however, stated that Butler was on the ground when testing the lines. Here, given the conflicting contentions regarding Butler's position when electrocuted, it appears that

the issue of contributory negligence also turns on factual issues for trial and is not appropriate for summary judgment.

## II.  Product Liability Act

The trial court and Court of Appeals decided as a matter of law that Butler was not a "user or consumer" of a product as that phrase appears in the Product Liability Act, and therefore, the Butlers could not present a claim under the Act.  We agree that the Butlers have no viable claim under the Act, but not for that reason.

�In  The Butlers' complaint alleged ten counts, each asserting negligence on the part of Peru.  The complaint was filed on January 13, 1995.  The law in effect at that time provided that the Product Liability Act "governs all actions in which the theory of liability is strict liability in tort." Ind.Code § 33–1–1.5–1 (1993).[2]  None of the Butlers' theories were based upon strict liability, and the Butlers argued against the application of the Product Liability Act in their lower court briefs.[3]  Accordingly, they presented no claim under the January 1995 version of the Act.  Finally, for reasons explained below, if a claim under the Act had been presented on appeal, its dismissal would be required. However, because we do not agree with the Court of Appeals view as to Butler's status as a "user or consumer," we address that issue as well.

�In  Both the trial court and the Court of Appeals held that the Product Liability Act did not apply because Butler was not a "user or consumer" under the Act.  The Act reads:

> a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:
>
> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
>
> (2) the seller is engaged in the business of selling the product; and
>
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which it is sold by the person sought to be held liable under this article.

Ind.Code § 34–20–2–1 (1998).[4]  A user or consumer is defined as:

> (1) a purchaser;
>
> (2) any individual who uses or consumes the product;
>
> (3) any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question; or
>
> (4) any bystander injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use.

*Id.* §§ 34–6–2–29, –147.[5]

The Court of Appeals determined that Butler did not fit into any one of these four

---

**2.**  This section was amended effective July 1, 1995, *see* Pub.L. No. 278–1995, § 1, 1995 Ind. Acts 4051, to apply to "all actions brought by a user or consumer against a manufacturer or seller for physical harm caused by a product regardless of the substantive legal theory or theories upon which the action is brought" and has since been recodified at Indiana Code § 34–20–1–1 (1998), *see* Pub.L. No. 1–1998, § 15, 1998 Ind. Acts 125.

**3.**  Indeed, in the Butlers' Brief to the Court of Appeals, they argued that the Product Liability Act did not apply because there was no product under the Act.  In the Butlers' Brief

in Support of the Petition to Transfer, they changed tactics and argued that the Act did apply because electricity was a product although the wiring was not.

**4.**  At the time of the suit this provision was codified at Indiana Code § 33–1–1.5–3.  The legislature has since recodified the Product Liability Act at Indiana Code §§ 34–20–1–1 to –9–1 with only stylistic changes.  *See* Pub.L. No. 1–1998, § 15, 1998 Ind. Acts 125–30.

**5.**  Formerly codified at Indiana Code § 33–1–1.5–2.

categories. Specifically, he was held not to be a "user or consumer." We disagree, and conclude that as an employee of the School, he may be an "individual who uses or consumes the product." In *Thiele v. Faygo Beverage, Inc.,* 489 N.E.2d 562, 586 (Ind.Ct.App.1986), the Court of Appeals held that "the legislature intended 'user or consumer' to characterize those who might foreseeably be harmed by a product at or after the point of its retail sale or equivalent transaction with a member of the consuming public." This includes purchasers, "any member of the consuming public who may be injured by [the product]," and "a member of the family of the final purchaser, or his employee, or a guest at his table, or a mere donee from the purchaser." *Id.* at 587–88 (citations omitted).[6] In this case, the School was the ultimate user of the electrical transmission system and the electricity. As an employee of a "consuming entity," Butler falls under the definition of "user or consumer" established in *Thiele.*

We do not suggest that Peru had any exposure under the Act. Although Peru obviously furnished the electricity within the Act's period of limitations, the same is not true of the electrical equipment regardless of Peru's role in its manufacture, design, or construction. Peru is correct that the baseball field electrical equipment was installed in approximately 1970—well over the ten-year statute of repose for the Product Liability Act. Accordingly, no claim may be brought under the Act on the basis of defects in that equipment. *See McIntosh v. Melroe,* 729 N.E.2d 972 (Ind. 2000).

■ From time to time, the Butlers appear to contend that electricity, not the electrical transmission equipment, is the

"product" under the Product Liability Act. The electricity may be a product under the Act. *See Public Serv. Ind., Inc. v. Nichols,* 494 N.E.2d 349, 355 (Ind.Ct.App.1986). However, the Butlers give us no suggestion as to why the electricity—as distinct from the configuration of the equipment— was defective or unreasonably dangerous. There is no evidence that the electricity meets the requirement of a "product in a defective condition unreasonably dangerous to any user or consumer." Ind.Code § 34–20–2–1 (1998).[7] In sum, it is understandable why the Butlers elected not to present their case under the Product Liability Act.

### Conclusion

The judgment of the trial court is affirmed in part and reversed in part. This case is remanded for proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.

---

**6.** The *Thiele* Court went on to hold that the plaintiff in that case was not a "user or consumer" because he was an employee of an intermediary. *See* 489 N.E.2d at 588. A later Court of Appeals opinion, *Crist v. K-Mart Corp.,* 653 N.E.2d 140, 143 (Ind.Ct.App.1995), expressed doubt about the status of intermediaries and employees of intermediaries. We

need not address the status of intermediaries or employees of intermediaries because the School and its employees were not links in an incomplete distribution chain.

**7.** This section was formerly codified at Indiana Code § 33–1–1.5–3(a).