**Ronald SPUDICH, Appellant–Plaintiff,**

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY, Appellee–Defendant.**

No. 45A05–0007–CV–298.

Court of Appeals of Indiana.

April 4, 2001.

Rehearing Denied June 14, 2001.

---

Saul I. Ruman, David W. Holub, David M. Hamacher, Ruman, Clements, Tobin & Holub, P.C., Hammond, IN, Attorneys for Appellant.

David C. Jensen, Paul A. Rake, Alyssa Stamatakos, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Ronald Spudich appeals from the trial court's grant of summary judgment in favor of Northern Indiana Public Service Company ("NIPSCO") on his complaint for damages arising out of an incident in which Spudich, who was stringing Christmas lights on evergreen trees at East Chicago City Hall, suffered an electrical injury from adjacent power lines owned by NIPSCO. We affirm.

*Issues*

Spudich raises three issues for our review, which we restate as:

1. Whether Lake County Rule of Civil Procedure 4 ("Local Rule"), which authorizes a reply brief to a motion for summary judgment, is in conflict with Trial Rule 56 and should be declared void, such that NIPSCO's reply brief should not have been allowed in the first instance;

2. If Local Rule 4 is not in conflict with Trial Rule 56, whether the trial court properly allowed NIPSCO to depose a witness unknown to it at the time it filed its motion for summary judgment and designate evidence from that deposition in its reply brief; and

3. Whether the trial court properly granted summary judgment in favor of NIPSCO.

*Facts and Procedural History* [1]

Spudich suffered an electrical injury on December 16, 1996, while stringing Christmas lights on trees in front of the East Chicago Administrative Building.[2] The trees, owned by East Chicago, were growing on NIPSCO's line easement. NIPSCO owns power lines suspended over the trees, approximately thirty-eight feet above the ground.

Spudich was stringing the lights as part of his employment with J.G.M. Enterpris-

---

1. Oral argument was held in Indianapolis, Indiana on March 8, 2001.

2. Spudich had actually strung the lights on December 9, 1996, without incident. However, several electrical problems with the lights necessitated that he remove and restring some of the lights. He was in the process of doing so on December 16, 1996, when he was injured.

es. Both Spudich and his employer were aware of the presence of NIPSCO's energized power lines over the trees in which Spudich was working, and were also aware of the danger associated therewith. However, J.G.M. did not request assistance from NIPSCO nor did it ask that NIPSCO de-energize the power lines during the work. Spudich used an aerial bucket truck to elevate himself to the top of the trees to do his work. While standing in the bucket on December 16, 1996, Spudich suffered an electrical injury.[3]

Spudich filed his first amended complaint for damages against NIPSCO and the City of East Chicago on April 14, 1997. NIPSCO answered, and discovery was conducted. Among other discovery, NIPSCO requested, via written interrogatory, that Spudich identify any and all expert witnesses he intended to call at trial and the substance of the witnesses' testimony. On June 25, 1999, NIPSCO filed a motion for summary judgment, designating certain evidence in support thereof, including the affidavits of Larry Russell and Thomas Hawke, both NIPSCO employees, and relevant portions of the depositions of Spudich and Joel Markovich, J.G.M.'s owner and Spudich's supervisor. On July 23, 1999, Spudich filed supplemental answers to the interrogatories described above, identifying Donald Scheer as an expert witness for the first time. Thereafter, Spudich filed his response to NIPSCO's motion for summary judgment, designating, *inter alia,* the affidavit of Scheer.

On September 8, 1999, NIPSCO filed a motion for extension of time to file a reply to the summary judgment, which the trial court granted that same day. Spudich filed a motion to set aside the order granting additional time. A hearing was held on October 14, 1999, on which date Spudich also filed a designation of additional evidence in opposition to NIPSCO's motion for summary judgment. The trial court ordered NIPSCO to file any reply by November 22, 1999, specifically permitting NIPSCO to depose Scheer. Scheer was in fact deposed, and NIPSCO subsequently filed a timely reply, which referenced Scheer's deposition testimony. Spudich moved to strike NIPSCO's reply.

On December 16, 1999, the trial court held a hearing on the pending motions: NIPSCO's motion for summary judgment and Spudich's motion to strike NIPSCO's reply. The trial court subsequently entered an order denying Spudich's motion to strike and granting NIPSCO's motion for summary judgment. After his motion to correct errors was denied, Spudich initiated this appeal.

*Discussion and Decision*

I. Conflict Between Local Rule
4 and Trial Rule 56

Spudich contends that Lake County Local Rule 4 is inconsistent with Trial Rule 56 and should be declared void. Local Rule 4 provides that:

All motions filed pursuant to Trial Rules 12 and 56 shall be accompanied by a separate supporting brief. An adverse party shall have thirty (30) days after service of the initial brief in which to serve and file an answer brief, and the moving party shall have ten (10) days

---

**3.** Because of the procedural posture of this case, the facts have not been fully developed and there remains a dispute regarding how Spudich was injured. NIPSCO alleges that Spudich raised the bucket too high and that his head actually came into contact with the wire; Spudich, however, alleges that he was several feet below the wire when he was injured. Because of the nature of the legal issues in this case, this factual dispute does not preclude summary judgment. It is undisputed, however, that the tree was not in contact with the line.

after service of the answer brief in which to serve and file a reply brief. Lake County L.R. 4(A). Trial Rule 56 provides, in pertinent part, that:

(B) A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof....

(C) The motion and any supporting affidavits shall be served in accordance with the provisions of Rule 5. An adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits. The court shall conduct a hearing on the motion which shall be held not less than ten (10) days after the time for filing the response....

Ind. Trial Rule 56(B) and (C). Spudich contends that because Trial Rule 56 does not specifically provide for the filing of reply briefs on summary judgment, Local Rule 4 is improper and should be declared void and of no effect. Because Trial Rule 56 is silent on the subject of reply briefs, NIPSCO responds that the two rules cannot be inconsistent.

The Indiana Trial Rules specifically authorize the making and amending of local rules of court:

Each local court may from time to time make and amend rules governing its practice not inconsistent with these rules. In all cases not provided for by rule the local court may regulate its practice in any manner not inconsistent with these rules....

T.R. 81. However, the rules of procedure promulgated by our supreme court are binding on all Indiana courts, and no court "can circumvent the rules and thereby avoid their application" by promulgating an inconsistent local rule. *Armstrong v. Lake*, 447 N.E.2d 1153, 1154 (Ind.Ct.App. 1983) (quoting *In re Estate of Moore*, 155 Ind.App. 92, 291 N.E.2d 566, 568 (1973)). A local rule which is inconsistent with the Trial Rules is deemed to be without force and effect. *Id.*

In *State v. Bridenhager*, 257 Ind. 699, 279 N.E.2d 794 (1972), our supreme court declared the test for determining when a procedural rule enacted by statute is inconsistent with the trial rules:

To be "in conflict" with our rules ..., it is not necessary that the statutory rules be in direct opposition to our rule, so that but one could stand per se. It is only required that they be incompatible to the extent that both could not apply in a given situation.

*Id.* at 796. In *Armstrong*, this court held that the same test would apply to a local rule alleged to be inconsistent with the trial rules. 447 N.E.2d at 1154. Thus, in *Armstrong*, we held that a local rule which provided that "[a]ll [civil] cases ... shall be tried by a six (6) person jury" was in conflict with Trial Rule 48, which provided at that time that "[t]he parties may stipulate that the jury shall consist of any number less than twelve."[4] *Id.* The local rule was in conflict with the Trial Rule because "a rule which permits stipulations of any number less than twelve makes little or no sense unless one assumes that, in the absence of a stipulation, the jury would consist of twelve." *Id. See also Lies v. Ortho Pharmaceutical Corp.*, 259 Ind. 192, 286 N.E.2d 170, 173 (1972) (holding that a local rule requiring counsel to give a written "reminder" to the trial judge five days prior to the expiration of his time for ruling before moving to withdraw the case

---

**4.** The appeal in *Armstrong* was initiated prior to the enactment of Indiana Code chapter 34–1–20.5 (now Indiana Code chapter 34–36–3) which expressly provides for a jury to consist of six members in a civil case.

from that trial judge pursuant to Trial Rule 53.1 is in conflict with Trial Rule 53.1 because the local rule "purports to attach a condition to its application."); *In re the Marriage of Murray*, 460 N.E.2d 1023, 1027 (Ind.Ct.App.1984) (holding that a local rule which required Trial Rule 12(B) motions to dismiss to be accompanied by a memorandum in support thereof or be deemed stricken is in conflict with Trial Rule 12(B) because the local rule is "an improper impingement" on motions made pursuant to the Trial Rule, which requires no such memorandum); *Midwest Natural Gas Corp. v. Locke Stove Co., Inc.*, 435 N.E.2d 85, 87 (Ind.Ct.App.1982) (holding that a local rule which provided that all motions were considered submitted for ruling without a hearing unless a hearing was requested by separate motion is in conflict with Trial Rule 56(C) which provides that a trial court "shall conduct a hearing" on a motion for summary judgment).

■ In this case, Local Rule 4 expressly provides for the filing of a reply brief on a motion for summary judgment. Trial Rule 56 neither expressly permits nor precludes such a reply brief. The supreme court has, in other instances, either expressly permitted or expressly prohibited reply briefs. *Compare* T.R. 56 *with* App. R. 54(D) ("Reply briefs on Rehearing are prohibited.") *and* App. R. 46(C) ("The appellant may file a reply brief responding to the appellee's argument.") In Trial Rule 56, however, the supreme court has remained silent on the specific subject of a reply brief. The Rule *does*, however, provide for affidavits submitted in support or in opposition to summary judgment to be supplemented or opposed by depositions, answers to interrogatories, and further affidavits. T.R. 56(E). Clearly, additional

evidence after the initial filings is contemplated by the Trial Rule, and that the Local Rule provides a mechanism for filing that evidence is not inconsistent with the Trial Rule.

Moreover, there are several cases which, although not directly addressing an issue regarding the permissibility or content of a reply on summary judgment, nonetheless reference such a reply. *See Aldrich v. Coda*, 732 N.E.2d 243, 244 (Ind.Ct.App. 2000) ("Dr. Coda filed a reply to Aldrich's response [to his motion for summary judgment] and alleged that Dr. Shea's affidavit was insufficient to create a genuine issue of material fact to overcome summary judgment...."); *Hale v. R.R. Donnelley and Sons*, 729 N.E.2d 1025, 1026 (Ind.Ct. App.2000), *trans. denied* ("Unarco filed its reply to Hale's memorandum in response to Unarco's motion for summary judgment...."); *Sullivan v. City of Evansville*, 728 N.E.2d 182, 195 n. 7 (Ind.Ct.App. 2000) ("As the City points out, Sullivan did not submit his attorney's affidavit in support of his summary judgment motion, but in reply to the City's response."). The practice of filing a reply brief on summary judgment is not unique to Lake County.

Local Rule 4 is not incompatible with Trial Rule 56 to the extent that both could not apply in any given situation, and therefore, we reject Spudich's claim that the Local Rule should be held invalid.

II. Content of Local Rule 4 Reply Brief

■ Spudich also contends that, if a reply brief on summary judgment is permissible, the trial court nevertheless erred in allowing NIPSCO to file a reply brief which included additional designations of evidence [5] and arguments not included in

---

**5.** NIPSCO did not file a separate designation of evidence with its reply brief, and therefore, Spudich refers to the evidence NIPSCO relies upon in its reply as *"un*designated." However-

er, NIPSCO did refer to specific parts of the evidence appended to its reply, and this is sufficient to constitute a designation of evidence. *Long v. Durnil*, 697 N.E.2d 100, 104

its original motion for summary judgment. NIPSCO's motion for summary judgment alleged that "NIPSCO owed no duty to insulate its lines for a worker whose occupation brought him near them absent notice of his work activity." R. 113. NIPSCO then presented two issues in its memorandum in support of summary judgment: whether NIPSCO owed "a duty of insulation of its power lines for Spudich, who while working for his employer, suffered electrical injuries after contacting the lines, which were suspended over 38' above the ground"; and whether NIPSCO owed "a duty to insulate power lines other than by height to safe guard those whose work activity brings them in proximity, absent notice." R. 115. In response, Spudich identified several material facts which he alleged precluded summary judgment, including that "NIPSCO was aware of its power lines being in dangerous proximity to a City Hall tree and that work was taking place around the tree," r. 162, and that the National Electrical Safety Code "requires that NIPSCO maintain a minimum eight (8) foot clearance between its high voltage lines and trees" which NIPSCO did not do. R. 164, 167. Therefore, NIPSCO responds that its reply, both as to its substance and the evidence designated in support thereof, merely responded to the material facts alleged by Spudich in his response to summary judgment. Specifically, NIPSCO's reply was addressed to the issue of whether NIPSCO had notice that Spudich would be in the proximity of the power lines and whether the testimony of the expert upon whose opinion Spudich relied in ·alleging that the power line was too close in proximity to the tree should be excluded.

Spudich cites Trial Rule 56(C) and *Nelson v. Denkins,* 598 N.E.2d 558 (Ind.Ct. App.1992), in support of his argument that any and all evidentiary designations should occur when the motion or response is filed. Trial Rule 56(C) provides that "[*a*]*t the time of filing the motion or response,* a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admission, matters of judicial notice, and any other matters on which it relies for purposes of the motion." (Emphasis added). In *Nelson,* this court was confronted with a sequence of events on summary judgment similar to those here: the defendant filed for summary judgment, the plaintiffs filed a timely response, the defendant then filed a reply memorandum in support of his motion for summary judgment, and a hearing was held on the motion. Nearly a month after the hearing, the plaintiffs filed a statement in opposition to defendant's motion for summary judgment, which the defendant moved to strike. The trial court granted the motion to strike, and the plaintiffs appealed, arguing that the trial court erred in striking their statement in opposition or, in the alternative, erred by not also striking the defendant's reply. We held that the trial court correctly granted the defendant's motion to strike because the plaintiffs' statement was filed late: "Trial Rule 56(C) provides that an adverse party has 'thirty (30) days after service of the motion [for summary judgment] to serve a response and any opposing affidavits.'" *Id.* at 564. Plaintiffs' statement was filed more than two months after defendant's motion for summary judgment and after the hearing on the motion. Spudich points to the following language from *Nelson* :

> [Plaintiffs] argue that they had thirty days after [defendant] filed his reply

(Ind.Ct.App.1998), *trans. denied* ("[T]he form by which a party is to designate evidence is not mandated by the rule. So long as the trial court is advised of the specific material upon which the parties rely, the material may be considered.") (citations omitted).

memorandum. This is not in accordance with T.R. 56(C) which specifically states that the response shall be filed within thirty days after the motion for summary judgment is filed. It is true, as the [plaintiffs] note, that T.R. 56 does not provide for the filing of a reply memorandum. However, there is no harm shown. In determining a motion for summary judgment, the trial court may only look to a brief for propositions of law, not for facts. The reply memorandum was filed to explain additional legal authority. No new facts were offered.

*Id.* (citations omitted). Spudich contends that this language leaves the reader with "the clear impression that a reply brief, containing new evidence, would have been found harmful, rather than merely harmless error." Brief of Appellant at 29.

Spudich's discussion of Trial Rule 56(C) and *Nelson* does not acknowledge that Trial Rule 56 also provides that the trial court "may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." T.R. 56(E). NIPSCO used its reply brief and the evidence designated therein to respond to the arguments and evidence contained in Spudich's response. As NIPSCO clearly could have done so under the language of Trial Rule 56, there was no harm in accepting such evidence in the form of a reply brief pursuant to the local rule. We disagree with Spudich's contention that this gives the movant an unfair advantage by allowing the movant to present evidence both first and last.[6] Although the Local Rule only provides for a motion, response, and reply, Trial Rule 56(E) allows either party to submit supplemental designations. In fact, Spudich filed an additional designation of evidence nearly two months after his original response and designation.

The trial court did not err in allowing NIPSCO's reply brief and corresponding designations of evidence.

### III. Summary Judgment

#### A. Standard of Review

■ Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.

---

**6.** Spudich posits that allowing the movant to present evidence both first and last "creates the potential for sandbagging [and] favors the last party with a chance to respond...." Brief of Appellant at 27. If Spudich were correct that Trial Rule 56 allows only a motion and then a response, it would be the non-movant who held the upper hand, as here, where Spudich did not identify Scheer as an expert until some time after NIPSCO filed its motion for summary judgment and then designated Scheer's affidavit in support of his response to the motion for summary judgment. We do not mean to imply any conscious wrongdoing on Spudich's part in the naming of his expert, we merely note that, by allowing supplemental designations by either party until and including the hearing, Trial Rule 56 eliminates any real threat of "sandbagging." Moreover, we note that the Local Rule in conjunction with the Trial Rule may actually benefit the non-movant in some circumstances. If the movant were not allowed to file a reply brief, he or she could nonetheless designate supplemental evidence at the hearing, to which the non-movant would most likely be able to respond with only argument. However, a written reply by the movant prior to the hearing gives the non-movant the opportunity to prepare and file his or her own supplemental designations of evidence.

*I/N Tek v. Hitachi Ltd.*, 734 N.E.2d 584, 586 (Ind.Ct.App.2000), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Gilman v. Hohman,* 725 N.E.2d 425, 428 (Ind.Ct.App. 2000), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Interstate Cold Storage v. General Motors Corp.,* 720 N.E.2d 727, 730 (Ind.Ct. App.1999), *trans. denied.* We do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Estate of Hofgesang v. Hansford,* 714 N.E.2d 1213, 1216 (Ind.Ct.App.1999). The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin,* 725

N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

### B. NIPSCO's Duty to Spudich [7]

To sustain his action for negligence, Spudich must establish: (1) a duty owed by NIPSCO to conform its conduct to a standard of care arising from its relationship with him; (2) a breach of that duty by NIPSCO; and (3) an injury to Spudich proximately caused by the breach of that duty. *St. John Town Board v. Lambert,* 725 N.E.2d 507, 514 (Ind.Ct.App. 2000). Whether NIPSCO breached a duty and whether the breach proximately caused injury to Spudich are generally questions for the trier of fact. *Northern Indiana Public Serv. Co. v. Sharp,* 732 N.E.2d 848, 856 (Ind.Ct.App.2000). However, the existence of a duty is a question of law for the court. *Id.* A duty will be found to exist where reasonable persons would recognize it and agree that it exists. *Id.* A determination of whether a duty exists involves balancing the following factors: 1) the relationship between the parties; 2) the reasonable foreseeability of harm to the person injured; and 3) public policy concerns. *Id.*

It is a well-settled rule of law that "any company which engages in the distribution of electricity has a common law duty to exercise reasonable care to keep its power lines safely insulated by an effective coating or covering in places where the general public may come in contact with those lines." *Southern Indiana Gas & Elec. Co. v. Steinmetz,* 177

---

**7.** Spudich contends that the trial court erred in granting summary judgment to NIPSCO on all of his claims of negligence because NIPSCO only moved for summary judgment as to his duty to isolate/insulate claim, not his duty to maintain and duty to inspect claims. However, it is apparent from the legal arguments the parties made on summary judgment, in their respective briefs as well as at the hearing, that the issue before the trial court was whether NIPSCO had *any* recognizable legal duty to Spudich.

Ind.App. 96, 99, 377 N.E.2d 1381, 1383 (1977) (citing *Petroski v. Northern Indiana Pub. Serv. Co.,* 171 Ind.App. 14, 354 N.E.2d 736 (1976)). As a general rule, however, insulation is not required when the lines are sufficiently isolated so that the general public could not reasonably be expected to come in contact with them. *Id.* at 99–100, 377 N.E.2d at 1383. *See also Butler v. City of Peru,* 733 N.E.2d 912, 916–17 (Ind.2000) ("Generally, electric utilities have no duty to insulate even those lines that they own if the general public is not exposed to the lines and the utility has no knowledge of a particular segment of the population that is regularly exposed to the uninsulated lines."). The term "general public" as used in this context means those persons who could reasonably be anticipated to be dangerously close to the lines:

> The word "public," as used in the statute, means the general public—a great multitude of persons who would, in the course of daily events, be exposed to danger by the presence of an uninsulated wire carrying a dangerous voltage of electricity. The word has no reference to an individual whose particular employment requires him to work in the proximity of a live wire with which there would be no likelihood of his coming in contact except for such employment. The exposure must be common to the concourse of people who make up the general public in any locality.

*Id.* at 100, 377 N.E.2d at 1383–84 (quoting *Jakob v. Gary Railways, Inc.,* 118 Ind. App. 13, 16, 70 N.E.2d 753, 754 (1947)).

▪ Accordingly, an electric utility will not generally be required to insulate its wires to protect only those persons who might come into contact with power lines in the course of their employment. However, this is not the case when the utility knows or has knowledge of facts from which it should know that a particular segment of the population will be regularly exposed to uninsulated wires for one reason or another. *Steinmetz,* 177 Ind.App. at 100, 377 N.E.2d at 1384.

▪ In this case, it is undisputed that the power lines with which Spudich came into contact were not insulated. However, NIPSCO designated evidence showing that the lines were elevated to a height of nearly forty feet. Thus, the likelihood of the "general public," as that term was defined in *Jakob,* coming into contact with the lines was virtually nonexistent. Spudich was near the lines only as a product of his employment with J.G.M. Enterprises, which had apparently been contracted by the City of East Chicago to decorate the City's Administrative Building grounds for the holidays. Therefore, Spudich was not a member of the general public to whom NIPSCO owed a duty to insulate or isolate its lines. Moreover, the designated evidence showed that the top of the tree which Spudich was decorating when he was injured was at least six feet below the lines. Thus, because it was not the tree interfering with the lines, but rather Spudich interfering with the lines that caused the injury, NIPSCO's duty to inspect and maintain its lines to keep them from being in a dangerous condition is not implicated.

▪ Moreover, as to the exception to the general rule where the electrical utility could be charged with knowledge that a particular segment of the population will come into regular contact with the lines, no evidence was designated to show that Spudich was part of a "particular segment of the population that would come into regular contact with the lines." Once a year work in the vicinity of power lines by a city worker or a worker hired by the city does not constitute regular contact by a particular segment of the population. As for Spudich's contention that NIPSCO should

have known that work would be performed near the lines during the holiday season, NIPSCO designated evidence showing that both Spudich and his employer were aware of the presence of the power lines in proximity to the trees, and that they even discussed the potential danger. However, Spudich's employer did not contact NIPSCO concerning the work that was being done near the power lines on this occasion because Spudich told him that it was "no problem because he has done this before...." R. 148. Spudich and his employer were in the best position to know that work would be performed near the lines on a specific date, and also to know that the lines were close to the tree, because Spudich had strung lights on the same tree just a week prior to this incident. Nonetheless, no actual notice was given to NIPSCO of the work so that they could take steps to insure that the lines were safe for those working in close proximity. Under such circumstances, NIPSCO cannot be charged with knowledge that work would be performed near its power lines such that it had a duty to insulate those lines to keep Spudich from harm.

As a matter of law, NIPSCO owed no duty to Spudich, who was not a member of the general public and whose work near the power lines was not known to NIPSCO. The trial court did not err in granting summary judgment for NIPSCO on Spudich's complaint for damages.

### Conclusion

Lake County Local Rule 4 is not in conflict with Trial Rule 56, and the trial court did not err in accepting and considering NIPSCO's supplemental designations of evidence in its reply brief. Further, the trial court did not err in determining as a matter of law that NIPSCO owed no duty to Spudich and therefore granting summary judgment

for NIPSCO on Spudich's claims for negligence. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

DARDEN and RILEY, JJ., concur.