

**FILED**

May 06 2020, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Alyssa C.B. Cochran
Kightlinger & Gray, LLP
New Albany, Indiana

Thomas J. Jarzyniecki, Jr.
Jennifer M. Van Dame
Kightlinger & Gray, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Lee C. Christie
Katherine A. Franke
Cline Farrell Christie Lee
   & Bell, P.C.
Indianapolis, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indianapolis Power & Light Company, a Subsidiary of the AES Corporation, | May 6, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CT-2206 |
| v. | Appeal from the Marion Superior Court |
| Joshua Gammon and Nicole Gammon, | The Honorable Marc Rothenberg, Judge |
| *Appellees-Plaintiffs* | Trial Court Cause No. 49D07-1608-CT-29665 |

**Vaidik, Judge.**

# Case Summary

[1]    In the course of his employment, Joshua Gammon was installing metal trim on the roof of a commercial building, near uninsulated power lines owned by Indianapolis Power & Light Company ("IPL").  Gammon was electrocuted and later sued IPL.  IPL moved for summary judgment, arguing that it did not owe Gammon a duty.  The trial court denied IPL's motion, and IPL appeals.  Under well-established principles of Indiana law, because the power lines were high above the ground and did not pose a threat to the general public, and because Gammon was exposed to the lines only as a result of his employment, IPL did not have a duty to insulate the lines.  Nor did IPL owe Gammon a duty under the building-clearance requirements of the National Electrical Safety Code or under our Supreme Court's recent decision in *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384 (Ind. 2016).  Therefore, we reverse the trial court's denial of IPL's motion for summary judgment.

# Facts and Procedural History

[2]    In June 2015, Gammon was employed by a company called Window Man.  Window Man was hired to install aluminum trim around the roof of a commercial building located at 6845 Madison Avenue in Indianapolis, and it sent Gammon to do the work.  There were uninsulated IPL power lines within a few feet of the roof of the building.  Gammon knew that "electrical lines can be de-energized by the power company," but he did not call IPL to ask it to do so.  Appellant's App. Vol. II p. 67.  He set up an aluminum ladder near the

lines, climbed the ladder holding a piece of trim, and was electrocuted. (There is no evidence that either Gammon or the piece of trim actually touched a power line, but as we explain below, that fact is irrelevant to our analysis.) He fell approximately forty feet and suffered serious injuries.

A year later, Gammon filed suit against IPL (along with his wife Nicole, who makes a claim for loss of consortium). He claimed that IPL acted negligently by, among other things, failing to insulate the wires and failing to comply with the building-clearance requirements of the National Electrical Safety Code (NESC). IPL acknowledges that the lines were not insulated but disputes that they violated the NESC clearance requirements.

IPL moved for summary judgment, arguing that "under well settled Indiana law, a utility company, such as IPL, does not have a duty to protect skilled workmen, such as Plaintiff, from the obvious dangers of overhead lines." *Id.* at 31. After further briefing and a short hearing, the trial court issued a one-sentence order denying IPL's motion.

Gammon now brings this interlocutory appeal.

# Discussion and Decision

IPL contends that the trial court erred by denying its motion for summary judgment. We review motions for summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). That is, "The judgment sought shall be rendered forthwith if the

designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

[7] "In order to prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003), *reh'g denied*. IPL argues that it did not owe Gammon a duty and that it is therefore entitled to summary judgment. We agree.

## I. IPL did not have a duty to insulate the power lines

[8] As both IPL and Gammon note, we have said that "electric utilities have a duty to exercise such care as a person of reasonable prudence would use under like conditions and circumstances." *Rogers v. Grunden*, 589 N.E.2d 248, 256 (Ind. Ct. App. 1992), *reh'g denied*, *trans. denied*. Gammon contends that our duty analysis should begin and end with that statement. However, in the very next sentence of that opinion, we indicated that the relevant duty is much narrower when the plaintiff is injured by an uninsulated power line: "Companies engaging in the generation and distribution of electricity have a duty to exercise reasonable care **to keep distribution and transmission lines safely insulated in places where the general public may come into contact with them**." *Id.* (emphasis added). Our Supreme Court later adopted this narrower statement of

duty. *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003); *Butler v. City of Peru*, 733 N.E.2d 912, 916-17 (Ind. 2000).[1]

[9] We applied the narrow duty to insulate in a case relied upon heavily by IPL, *Spudich v. N. Ind. Pub. Serv. Co.*, 745 N.E.2d 281 (Ind. Ct. App. 2001), *reh'g denied*, *trans. denied*. Spudich worked for a company that was hired to string Christmas lights on trees in front of the East Chicago Administrative Building, and he was sent to work on the project. There were uninsulated power lines suspended over the trees, approximately thirty-eight feet above the ground. Spudich used an aerial bucket truck to reach the top of the trees, and while standing in the bucket, he suffered an electrical injury. Spudich sued the utility, and the utility moved for summary judgment, arguing that it did not owe a duty to Spudich. The trial court granted the utility's motion, and Spudich appealed.

[10] In affirming the trial court's conclusion that the utility did not owe Spudich a duty, we first noted:

> It is a well-settled rule of law that any company which engages in the distribution of electricity has a common law duty to exercise reasonable care to keep its power lines safely insulated by an effective coating or covering in places where the general public may come in contact with those lines. As a general rule, however, insulation is not required when the lines are sufficiently

---

[1] In *Rogers*, we also noted that even if the general public is not exposed to the power lines at issue, the electric utility has a duty to insulate the lines if it "knows or has knowledge of such facts from which it should know that a 'particular segment' of the population will be regularly exposed to the wires for one reason or another." 589 N.E.2d at 256. Gammon does not argue that this "particular segment" principle applies here.

> isolated so that the general public could not reasonably be
> expected to come in contact with them.

*Id.* at 290-91 (citations omitted). We then explained that the term "general public" means the "great multitude of persons who would, in the course of daily events, be exposed to danger by the presence of an uninsulated wire carrying a dangerous voltage of electricity" and "has no reference to an individual whose particular employment requires him to work in the proximity of a live wire with which there would be no likelihood of his coming in contact except for such employment." *Id.* at 291 (quoting *Southern Ind. Gas & Elec. Co. v. Steinmetz*, 177 Ind. App. 96, 100, 377 N.E.2d 1381, 1383-84 (1977)). "Accordingly," we observed, "an electric utility will not generally be required to insulate its wires to protect only those persons who might come into contact with power lines in the course of their employment." *Id.* We held that because the likelihood of the general public coming into contact with the lines "was virtually nonexistent" and because "Spudich was near the lines only as a product of his employment," the utility did not owe Spudich a duty to insulate the lines. *Id.*

[11] The similarities between this case and *Spudich* are obvious. Like the lines at issue in *Spudich*, the lines at issue were approximately forty feet above the ground and therefore did not pose a threat to the general public. And like the plaintiff in *Spudich*, Gammon was near the lines only because of his employment.

[12] Despite IPL's extensive reliance on *Spudich*, Gammon mentions the decision only once in his brief. He notes that *Spudich* (like *Butler*) refers to people coming "into contact" with power lines and emphasizes that there is no evidence that he "came into contact" with the lines at issue in this case. Appellee's Br. pp. 25-26. But in this context, "contact" should not be read to mean only physical touching. In *Butler*, our Supreme Court used the concept of "coming into contact" with power lines interchangeably with the concept of being "exposed" to such lines. 733 N.E.2d at 916-17. The word "contact," then, includes not only physically touching power lines but also coming in close proximity to them. *Spudich* confirms this reading. In footnote 3 of our opinion, we explained:

> Because of the procedural posture of this case, the facts have not been fully developed and there remains a dispute regarding how Spudich was injured. NIPSCO alleges that Spudich raised the bucket too high and that his head actually came into contact with the wire; Spudich, however, alleges that he was several feet below the wire when he was injured. Because of the nature of the legal issues in this case, this factual dispute does not preclude summary judgment.

*Spudich*, 745 N.E.2d at 285 n.3. Gammon does not acknowledge, let alone contest, that part of *Spudich*.

## II. The NESC does not establish a tort duty

[13] In a related argument, Gammon says that the issue is not whether the lines in question should have been insulated but, rather, whether the lines were "too

close" to the building. Appellee's Br. pp. 16-17, 26. He contends that the lines violated the NESC building-clearance requirements, which are incorporated by reference in the Indiana Administrative Code. *See* 170 Ind. Admin. Code 4-1-26. IPL disputes that claim, but we need not resolve this dispute. Whether the lines complied with the NESC is irrelevant to our duty analysis. As IPL notes, with no dispute from Gammon, "Indiana courts have repeatedly rejected the contention that administrative regulations establish a duty." Appellant's Br. pp. 31-32 (citing *Vaughn v. Daniels Co. (W. Va.), Inc.*, 841 N.E.2d 1133, 1144 (Ind. 2006), *reh'g denied*; *Beta Steel v. Rust*, 830 N.E.2d 62, 73-74 (Ind. Ct. App. 2005); *Vandenbosch v. Daily*, 785 N.E.2d 666, 670 (Ind. Ct. App. 2003), *trans. denied*; *Hodge v. Nor-Cen, Inc.*, 527 N.E.2d 1157, 1160 n.3 (Ind. Ct. App. 1988), *reh'g denied*, *trans. denied*).

## III. There is no need to reevaluate duty under *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*

[14] Gammon also argues that IPL owed him a duty because his injury was "foreseeable" under the standard adopted by our Supreme Court in *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384 (Ind. 2016). In *Goodwin*, our Supreme Court held that where foreseeability is a "component of duty," the court must decide whether the act or incident at issue was foreseeable. *Id.* at 389. This requires an analysis of the broad type of plaintiff and the broad type of harm involved to determine whether there is a probability or likelihood of harm serious enough to induce a reasonable person to take precautions to avoid it. *Id.* at 392, 393.

[15] Assuming that foreseeability is a "component" of the duty at issue here, existing caselaw establishes that Gammon's injury was **not** foreseeable for purposes of *Goodwin*. As we said in *Spudich*, "an electric utility will not generally be required to insulate its wires to protect only those persons who might come into contact with power lines in the course of their employment." 745 N.E.2d at 291. This is so because people who are exposed to power lines in the course of their employment are charged with knowledge of necessary safety precautions. *See N. Ind. Pub. Serv. Co. v. E. Chi. Sanitary Dist.*, 590 N.E.2d 1067, 1072 (Ind. Ct. App. 1992) (*NIPSCO*) (noting that an electric utility "will not generally be required to insulate its wires with a covering or coating to protect only those persons who might come into contact with power lines in the course of their employment as electric utility employees, **or while cleaning and repairing a sign near power lines, or while installing a TV antenna on private property**" (emphasis added)); *see also Butler*, 733 N.E.2d at 917 (citing *NIPSCO* for the proposition that an electric utility does not have a duty to insulate power lines "where the only people who come into contact with them are utility employees **or others charged with knowledge of necessary safety precautions**" (emphasis added)). And because we assume that such individuals will take necessary safety precautions, it is not foreseeable, for purposes of *Goodwin*, that they will be injured by power lines.

[16] The evidence here is consistent with that conclusion. Gammon acknowledged, during his deposition, that he had installed metal trim "[j]ust about every day for the last 15 years," that he worked around power lines "[v]ery often," and

that he knew to exercise caution when doing so. Appellant's App. Vol. II pp. 55, 58-59, 69-70. He also knew that electric utilities can de-energize power lines if necessary.[2]

[17] For these reasons, IPL did not owe Gammon a duty, and the trial court should have granted IPL's motion for summary judgment.

[18] Reversed.

May, J., and Robb, J., concur.

---

[2] Gammon also notes our holding that an electric utility owes a duty if the danger at issue "comes from some malfunction of which the person would have no reason to be aware." *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690, 696 (Ind. Ct. App. 2006). He suggests that non-compliance with the NESC building-clearance requirements would constitute a "malfunction." He does not cite any authority to support this proposition.