# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**JAMES F. GROVES**
Lee Groves & Zalas
South Bend, Indiana

ATTORNEYS FOR APPELLEES:

**F. JOSEPH JASKOWIAK**
**LAUREN K. KROEGER**
Hoeppner Wagner & Evans LLP
Merrillville, Indiana

FILED

Sep 30 2014, 9:38 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

YTC DREAM HOMES, INC., et al.,               )
                                             )
    Appellants-Plaintiffs,                )
                                             )
        vs.                          )          No. 45A03-1312-PL-467
                                             )
DIRECTBUY, INC., et al.,                     )
                                             )
    Appellees-Defendants.                 )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable John M. Sedia, Judge
Cause No. 45D01-1302-PL-21

**September 30, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

In this interlocutory appeal, YTC Dream Homes, Inc., et al. (the "Appellants")[1] appeal the trial court's order denying five *pro hac vice* petitions in favor of DirectBuy, Inc., et al. (the "Appellees").[2] The Appellants raise three issues which we consolidate and restate as whether the court erred when it denied the *pro hac vice* petitions. We reverse and remand.

FACTS AND PROCEDURAL HISTORY

The Appellants consist of ten franchisees of DirectBuy, Inc. ("DirectBuy"), each of which are located outside the state of Indiana. On February 22, 2013, the Appellants filed a complaint[3] stemming from a contract dispute through local counsel ("Local Counsel"). On April 11, 2013, local counsel filed a Motion to Accept Admission Pro Hac Vice (the "Motion to Accept") which named Attorneys Kristy Zastrow, Michael Dady, Barbara Bagdon, Joseph Goode, and Mark Leitner (the "Attorneys"), who work at two law firms located in Minneapolis, Minnesota, and Milwaukee, Wisconsin, and asked the court to admit the Attorneys as co-counsel for the limited purpose of this case. The Appellants' Motion to Accept contained Temporary Admission Receipts demonstrating that each of the Attorneys paid $145 on April 2, 2013.

The court initially granted the Appellants' Motion to Accept on April 22, 2013; however, on April 25, 2013, the Appellees filed an Opposition and Objection to the

---

[1] The chronological case summary ("CCS") lists the Appellants as follows: YTC Dream Homes, Inc., Jasi LLC, RYM Inc., 3Ba LLC, Buy the Way LLC, Prew International Group LLC, Vest Enterprises Inc., John J Menchaca, Rescued From Retail Inc., and Makson Enterprises LLC.

[2] The CCS lists the Appellees as follows: DirectBuy, Inc., Troy Templeton, Scott Powell, C Joseph Yast, Trivest Partners LP, and Bart Fesperman.

[3] The complaint is not contained in the record.

2

Appellants' motion arguing that the motion "fails to comply with Rule 3 of the Indiana Rules for Admission to the bar and the Discipline of Attorneys . . . and also fails to comply with Lake County Local Rule 45-TR3.1-5(C)," and the court vacated the order and set the matter for hearing on June 3, 2013. Appellees' Appendix at 19.

On April 29, 2013, Attorney Bagdon sent an email to Appellees' counsel with attached materials regarding the previous Motion to Accept and requested that the Appellees withdraw their Opposition and Objection. The hearing was continued at Appellants' request, and on May 28, 2013, Local Counsel filed Amended Verified Applications for Temporary Admission for each of the Attorneys (the "Petitions"). On June 5, 2013, the Appellees filed an Opposition to Amended Verified Applications for Temporary Admission of the Attorneys (the "Opposition") arguing that the Petitions "fail to provide any of the information required by Rule 3, Section 2(a)(4)(vii) that would allow the Court to determine whether or not the requisite good cause exists for the appearance in this action of out-of-state lawyers." Id. at 61. On June 20, 2013, the Appellants filed a Response arguing that the contents of the original Motion to Accept was sufficient save for the omission of the Attorneys' bar numbers and that they moved for a continuance and amended their Petitions to include the Attorneys' bar numbers. They asked the court to require Appellees' counsel to pay the Appellants' attorneys' fees and costs for "responding to [Appellees'] groundless motion" pursuant to Ind. Trial Rule 11(A). Id. at 88.

On July 8, 2013, the Appellees filed a Sur-Reply in Support of their Opposition stating that "[a] showing of 'good cause' . . . is the cornerstone of Rule 3" and the

3

Appellants failed to make such a showing. Id. at 130. The Sur-Reply also stated that the Appellees' representations regarding certain deficiencies in the Motion were completely accurate, arguing specifically that the proper paperwork was not filed in the trial court. The Sur-Reply also argued that even if the Attorneys had complied with Ind. Admission and Discipline Rule 3, they are not automatically entitled to temporary admission and, in fact, should be denied temporary admission because "[t]here is no need for out-of-state attorneys to appear in a garden-variety contract lawsuit in which Indiana law applies." Id. at 133. The Appellees also noted that "admission of out-of-state lawyers whose admitted style is 'aggravated litigation' per their own web site (www.kravitlaw.com), is different from the style of handling a lawsuit in Lake County," that "[t]heir aggressive nature is demonstrated in the tone of their brief and attached e-mail and letter," and that "[i]n fact, they have sought sanctions even before they have been admitted to practice." Id.

On September 5, 2013, the court held a hearing on the Petitions and took the matter under advisement. On September 9, 2013, the court issued its Order (the "September 9 Order") denying the Petitions. The September 9 Order states in part:

> 5. A temporary admission of an out-of-state lawyer pursuant to Admission and Discipline Rule 3(2) is within the discretion of the trial court, State ex rel Ind. Supreme Court Disciplinary Comm'n v. Farmer, 978 N.E.2d 409 (Ind. 2012), Matter of Fieger, 887 N.E.2d 87, 90 (Ind. 2008). However, in Lake County, this discretion is tempered by Lake County Local Rule 5(C) under which there is a presumption that an attorney not licensed in Indiana is not permitted to practice before the Lake Superior Court.

> 6. The plaintiffs argue that it is necessary for the five attorneys they seek to admit *pro hac vice* have specialized knowledge regarding franchise disputes, which is a large part of the subject matter of this case, and that the

4

plaintiffs wish to avail themselves of this specialized knowledge to assist them in prosecuting their case. There is no doubt that the five are eminently qualified, knowledgeable and have a high level of competence in the area of franchise law.

7. The defendants argue that out-of-state attorneys of this ilk propound a "style" of litigation that causes their own costs of litigation to double, maybe even triple. The way these expert attorneys the plaintiffs propose to admit litigate their cases is a "no-holds-barred" technique heavy on motion practice. This is exacerbated even more, the defendants argue, by sheer numbers: five attorneys from two separate firms from two separate states are sought by the plaintiffs to be admitted.

8. Neither of these arguments is persuasive on the issue before the Court: Exhibit B to plaintiffs' own Response to the defendants' objections lists no less than seventeen licensed Indiana attorneys from some of the largest Indiana law firms with multiple offices all over the state that are members of the American Bar Association Forum on Franchising. At the same time, unfortunately for the defendants, many of these large Indiana firms have offices located in jurisdictions that comprise large cities where the practice of "no-holds-barred" style of litigation is quite common.

9. Even assuming that the plaintiffs have shown good cause to admit these attorneys because of their specialized skills, the *pro hac vice* petitioner must overcome the presumption under Lake County Local Rule 5(C) that an attorney not licensed in Indiana is not permitted to practice before it. As stated above, the Court is not persuaded that the plaintiffs cannot locate attorneys licensed in the State of Indiana that have expertise in the field of franchise law.

Appellants' Appendix at 17-18.[4]

On September 26, 2013, the Appellants filed a Motion to Vacate September 9, 2013 Order For Lack Of Jurisdiction raising the question of "whether Supreme Court Trial Rule 81(A) and Supreme Court Admission and Discipline Rule 3(A) permit the Lake County Superior Court to adopt a local rule . . . imposing a presumption against the temporary admission of out-of-state attorneys based solely on their status as residents of

---

[4] The Appellants' Appendix appears to have been paginated, but the page numbers were not photocopied correctly onto the pages. We have handwritten page numbers into the Appellants' Appendix which appear to coincide with the page numbers listed in the table of contents.

states other than Indiana," as well as a memorandum in support of the motion. Appellees' Appendix at 195. That same day, the Appellants filed a Motion for Reconsideration of Order Denying *Pro Hac Vice* Admission of the Attorneys (the "Motion to Reconsider") requesting that the court reconsider and reverse its denial of the Attorneys' Petitions pursuant to Indiana Trial Rule 53.4, as well as a memorandum in support. The Appellants attached materials supporting the arguments in their memorandum, including declarations of certain Appellants and Attorneys that prejudice would result if the Attorneys were not admitted to try the case. The court did not rule on the Appellants' Motion to Reconsider, and it was accordingly deemed denied pursuant to Ind. Trial Rule 53.4(B).

On October 9, 2013, the Appellants filed a Motion for Entry of Final Judgment Pursuant to Indiana Rule of Trial Procedure 54(B) (the "October 9 Motion") requesting that the court enter final judgment and stating specifically that the "Motion is supported by Indiana Rule of Trial Procedure 54(B), Indiana Rule of Appellate Procedure 14(B)," and the memorandum in support of the motion, which it filed contemporaneously. Appellants' Appendix at 160-161. The memorandum in support stated in its conclusion that the Appellants "respectfully request that this Court certify its September 9, 203 [sic] Order as a Final Judgment pursuant to Rule 14(B) of the Indiana Rules of Appellate Procedure and declare that there is no just reason for delay." Id. at 169. The Appellees filed a memorandum in opposition to the October 9 Motion on October 23, 2013 arguing that Ind. Trial Rule 54(B) did not apply and that the Appellants' "Appellate Rule 14(B) argument is equally misplaced" because the court's decision did not involve a substantial

question of law and their alleged substantial expense is a problem of their own making. Appellees' Appendix at 315. On October 29, 2013, the Appellants filed a Reply Re: Motion for Entry of Final Judgment Pursuant to Indiana Rule of Trial Procedure 54(B) asserting that the September 9 Order was final under Ind. Trial Rule 54(B) and that, alternatively, they satisfied the requirements for certification of a discretionary interlocutory appeal under Ind. Appellate Rule 14(B)(1)(c).

On November 8, 2013, the court issued an order (the "November 8 Order") which denied the Appellants' October 9 Motion to the extent that it requested the court enter final judgment but granted their "alternative request to certify its [September 9 Order] for interlocutory appeal" pursuant to Ind. Appellate Rule 14(B)(1)(c)(iii). Appellants' Appendix at 171. The Appellants filed a Motion for Acceptance of Jurisdiction Over Interlocutory Appeal on December 2, 2013, which this court granted on January 17, 2014. The Appellants timely appealed on February 3, 2014.

## DISCUSSION

The issue is whether the trial court erred when it denied the Petitions. Before addressing the issues raised by the Appellants, however, we note that the Appellees argue in their brief that "[t]his Court [] lacks jurisdiction to entertain the interlocutory appeal." Appellees' Brief at 11. The Appellees suggest that the Appellants did not request review as a discretionary interlocutory appeal pursuant to Ind. Appellate Rule 14(B) until their October 29, 2013 Reply, which was filed outside the thirty-day timeframe contained in Rule 14(B)(1)(a), and that the court treated the Reply as a belated motion. As discussed above, although the October 9 Motion was titled Motion for Entry of Final Judgment

7

Pursuant to Indiana Rule of Trial Procedure 54(B), it cited to Rule 14(B). In addition, the Appellants' memorandum in support of their motion recited Ind. Appellate Rule 14(B)(1)(c), which is the provision discussing the grounds for granting a discretionary interlocutory appeal.

"[T]he proposition that courts are not bound by a party's characterization of a motion is well-founded in the law." Stephens v. Irvin, 734 N.E.2d 1133, 1135 n.1 (Ind. Ct. App. 2000) (citing Hubbard v. Hubbard, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998) (stating that this court will not elevate form over substance and therefore, despite being captioned a "Motion to Reconsider," the motion, which was made after the trial court entered final judgment, should have been treated as a motion to correct error); DeHart v. Anderson, 178 Ind. App. 581, 588, 383 N.E.2d 431, 436 (1978) (stating that courts are not bound by a party's characterization of a motion); Commercial Credit Corp. v. Miller, 151 Ind. App. 580, 585, 280 N.E.2d 856, 860 n.1 (1972) (stating that a court is to treat motions and pleadings for what they actually are, regardless of how they are captioned)), trans. denied. Here, despite some apparent confusion on the part of the Appellants, we find that they asked for review of the September 9 Order pursuant to Rule 14(B) in their October 9 Motion, that the trial court certified the order for review pursuant to that rule in its November 8 Order and that this court exercised proper discretion in accepting jurisdiction on January 17, 2014.

We now turn to the temporary admission of an out-of-state attorney, or *pro hac vice* admission, which we note is an accommodation made by the trial court pursuant to authority granted by the Indiana Supreme Court in Ind. Admission and Discipline Rule

8

3(2). See In re Fieger, 887 N.E.2d 87, 90 (Ind. 2008) (citing In re Fletcher, 655 N.E.2d 58, 60 (Ind. 1995)). "It is discretionary with the judge whether to allow temporary admission to an out-of-state attorney." Id. (citing Sparks v. State, 537 N.E.2d 1179, 1181 (Ind. 1989), reh'g denied). To the extent that this case requires us to review whether the court abused its discretion, we note that "[a] trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law." Wagler v. West Boggs Sewer Dist., Inc., 980 N.E.2d 363, 383 (Ind. Ct. App. 2012), reh'g denied, trans. denied, cert. denied, 134 S. Ct. 952 (2014). Further, to the extent that certain factual determinations are based on a paper record, they are also reviewed *de novo*. Am. Family Ins. Co. v. Ford Motor Co., 857 N.E.2d 971, 973 (Ind. 2006).

We also note that to the extent this case requires us to interpret Ind. Admission and Discipline Rule 3(2) and Local Rule 5(C) of the Lake County Rules of Civil Procedure, interpreting rules of court is a question of law which we review *de novo*. Gulf Stream Coach, Inc. v. Cronin, 903 N.E.2d 109, 111 (Ind. Ct. App. 2009) (noting that interpreting an Indiana Trial Rule presents a legal question to be reviewed *de novo*); see also Gast v. Hall, 858 N.E.2d 154 (Ind. Ct. App. 2006) (noting that "a ruling is reviewed *de novo* when it turns on the interpretation of a rule of evidence"), reh'g denied, trans. denied. "Although a rule adopted by the Supreme Court is not a statute, it has the same binding force as any formally promulgated statute," and thus when we interpret rules of court "we follow the same rules of construction as when we interpret statutes." Ind. Newspapers, Inc. v. Miller, 980 N.E.2d 852, 860 (Ind. Ct. App. 2012), aff'd on reh'g, vacated on

9

<u>trans</u>., 987 N.E.2d 70 (Ind. 2013), <u>trans. vacated and opinion reinstated</u>, 994 N.E.2d 731 (Ind. 2013).

Ind. Admission and Discipline Rule 3(2)(a) provides:

*Requirements for Temporary Admission on Petition.* Any court of the State of Indiana, in the exercise of discretion, may permit a member of the bar of another state or territory of the United States, or the District of Columbia, not admitted pursuant to Rule 21, to appear in a particular case or proceeding, only if the court before which the attorney wishes to appear or in the case of an administrative proceeding, the Supreme Court, determines that there is good cause for such appearance and that each of the following conditions is met:

    (1) A member of the bar of this state has appeared and agreed to act as co-counsel.

    (2) The attorney is not a resident of the state of Indiana, regularly employed in the state of Indiana, or regularly engaged in business or professional activities in the state of Indiana.

    (3) The attorney has made payment to the Clerk of the Supreme Court an annual registration fee in the amount set forth in Admission and Discipline Rule 2(b), accompanied by a copy of the Verified Petition for Temporary Admission that the attorney intends to file pursuant to subdivision (4) below. Upon receipt of the registration fee and petition, the Clerk of the Supreme Court will issue a temporary admission attorney number and payment receipt to the attorney seeking admission. If the attorney's verified petition for temporary admission is thereafter denied, the attorney shall provide a copy of the order denying temporary admission to the Clerk of the Supreme Court, and the Clerk shall issue a refund of the registration fee.

    (4) The attorney files a verified petition, co-signed by co-counsel designated pursuant to subdivision (a)(1), setting forth:

        (i) The attorney's residential address, office address, office telephone number, electronic mail address, and the name and address of the attorney's law firm or employer, if applicable;

10

(ii) All states or territories in which the attorney has ever been licensed to practice law, including the dates of admission to practice and any attorney registration numbers;

(iii) That the attorney is currently a member in good standing in all jurisdictions listed in (ii);

(iv) That the attorney has never been suspended, disbarred or resigned as a result of a disciplinary charge, investigation, or proceeding from the practice of law in any jurisdiction; or, if the attorney has been suspended, disbarred or resigned from the practice of law, the petition shall specify the jurisdiction, the charges, the address of the court and disciplinary authority which imposed the sanction, and the reasons why the court should grant temporary admission not withstanding prior acts of misconduct;

(v) That no disciplinary proceeding is presently pending against the attorney in any jurisdiction; or, if any proceeding is pending, the petition shall specify the jurisdiction, the charges and the address of the disciplinary authority investigating the charges. An attorney admitted under this rule shall have a continuing obligation during the period of such admission promptly to advise the court of a disposition made of pending charges or the institution of new disciplinary proceedings;

(vi) A list of all cases and proceedings, including caption and case number, in which either the attorney, or any member of a firm with which the attorney is currently affiliated, has appeared in any court or administrative agency of this state during the last five (5) years by temporary admission.

(vii) Absent good cause, repeated appearances by any person or by members of a single law firm pursuant to this rule shall be cause for denial of the petition. A demonstration that good cause exists for the appearance shall include at least one of the following:
      (a) the cause in which the attorney seeks admission involves a complex field of law in which the attorney has special expertise,
      (b) there has been an attorney-client relationship with the client for an extended period of time,

(c) there is a lack of local counsel with adequate expertise in the field involved,

(d) the cause presents questions of law involving the law of the foreign jurisdiction in which the applicant is licensed, or

(e) such other reason similar to those set forth in this subsection as would present good cause for the temporary admission.

(viii) A statement that the attorney has read and will be bound by the Rules of Professional Conduct adopted by the Supreme Court, and that the attorney consents to the jurisdiction of the State of Indiana, the Indiana Supreme Court, and the Indiana Supreme Court Disciplinary Commission to resolve any disciplinary matter that might arise as a result of the representation.

(ix) A statement that the attorney has paid the registration fee to the Clerk of the Supreme Court in compliance with subdivision (a)(3) of this rule, together with a copy of the payment receipt and temporary admission attorney number issued by the Clerk of the Supreme Court pursuant to subdivision (3).

In addition, Local Rule 5(C) provides:

A person not a member of the Bar of the State of Indiana shall not generally be permitted to practice in the Civil Division of the Lake County Court System. The Court in its discretion may permit such counsel to appear only for a specifically limited purpose and time. Counsel's Motion shall strictly comply with Admission and Discipline Rule 3, and disclose such purpose, time, and all other cases in which the attorney or members of the firm have been permitted to appear in the State of Indiana.

The Appellants argue that the trial court erred in its interpretation of Local Rule 5(C) and that to the extent Local Rule 5(C) conflicts with Ind. Admission and Discipline Rule 3(2) it is "deemed without force and effect." Appellants' Brief at 8 (quoting Armstrong v. Lake, 447 N.E.2d 1153, 1154 (Ind. Ct. App. 1983)). They maintain that a local rule which attaches a condition to the application of a rule issued by the Indiana

12

Supreme Court "is an impermissible 'impingement thereon' . . . ." Id. (quoting Armstrong, 447 N.E.2d at 1154 (quoting Lies v. Ortho Pharmaceutical Corp., 259 Ind. 192, 195, 286 N.E.2d 170, 173 (1972))). The Appellants cite to the Indiana Supreme Court's pronouncement in In re Fletcher that "appearances in one state by an attorney regularly admitted and licensed to practice in another state are generally permitted as a matter of comity, incident to the disposition of a particular matter isolated from his or her usual practice in the state of his or her residence" and that this principle is represented in Rule 3(2). Id. at 9 (quoting In re Fletcher, 655 N.E.2d at 59 n.1).

The Appellants assert that Rule 3(2)(a) contains two separate "good cause" requirements which are "distinct" – first, there is a general good cause determination for the court to make regarding whether a nonresident attorney should appear before evaluating the conditions listed as subparagraphs (1)-(4) of subsection (a), and second, there is a "narrowly specific 'good cause' concept" in Rule 3(2)(a)(4) which is relevant to some *pro hac vice* applications where the nonresident attorney has made repeated appearances in the Indiana court system. Id. at 12. The Appellants further argue that Rule 3(2)(a) should be interpreted to favor temporary admission in recognition of the Indiana Supreme Court's statement in In re Fletcher. They assert that Local Rule 5(C) imposes an improper presumption against temporary admission, which is in conflict with or duplicative of Rule 3(2)(a) and is therefore void pursuant to Ind. Trial Rule 81(A). The Appellants also argue that the Court's application of Local Rule 5(C) conflicts with Rule 3(2)(a) when it stated that the discretion granted to it by Rule 3(2)(a) was

13

"tempered" by Local Rule 5(C).[5]  Id. at 16.  Finally, the Appellants ask that this Court order the trial court to admit the Attorneys, suggesting that "[e]longating the process will simply add to the injury already occurring."  Id. at 21.

The Appellees argue that "[t]here is no inconsistency or meaningful difference between the requirements" of Local Rule 5(C) and Rule 3(2)(a), noting that Local Rule 5(C) states that attorneys not members of the Indiana bar "'shall not generally be permitted to practice' in the Lake County Courts" and that Rule 3(2)(a) "likewise does not generally permit lawyers who have no Indiana law license to practice in the Indiana Courts, but rather requires such lawyers to demonstrate to the satisfaction of the trial court's discretion, that there is 'good cause' for their admission."  Appellees' Brief at 19-20.  The Appellees contend that "[a] showing of 'good cause' for the temporary admission of unlicensed attorneys is the cornerstone of Rule 3(2)," and "[a] trial court cannot make such a determination unless the moving attorneys provide the trial court with 'good cause' information, examples of which appear in Admis. Disc. Rule 3(2)(a)(4)(vii)."  Id. at 25-26.  They suggest that the Appellants did not provide "substantiation for their novel interpretation of the 'good cause' requirement of Rule 3(2)(a) – that 'good cause' means something different in Rule 3(2)(a) from the identical term in Rule 3(2)(a)(4)(vii)" and that "[i]t is difficult in the extreme to imagine . . . that the Indiana Supreme Court used the same term . . . in a single Rule . . . to set two different standards for temporary admission."  Id. at 26.  The Appellees further maintain

---

[5] The Appellants further suggest in their brief that the court's decision "interpreting Local Rule 5(C) as incorporating a presumption against the admission of out-of-state lawyers . . . must be reversed for an additional, independent reason: the presumption violates the Privileges and Immunities Clause of the United States Constitution."  Appellants' Brief at 17.  Because we reverse the court's September 9 Order on other grounds, we need not address this argument.

14

that "[w]hile [Appellants] purported to provide information going to the 'good cause' issue in their reply brief in the trial court, their efforts again failed to comply with the requirements of Rule 3(2)(a)(4), which mandate **verified** information regarding their qualifications in their petitions."[6] Id.

The Appellants in their reply brief assert that the Appellees "basically ignore" their argument that the court made an error of law in interpreting Local Rule 5(C) when it concluded that its discretion was "tempered" by the rule, that Indiana case law states that "an error of law is automatically an abuse of discretion," and that "reversal is required solely because the local rule . . . exceeded Lake County's powers and must be struck down." Appellants' Reply Brief at 8 (citing State v. Econ. Freedom Fund, 959 N.E.2d 794, 800 (Ind. 2011), reh'g denied, cert. denied, 133 S. Ct. 218 (2012)). The Appellants also contend that the Appellees' arguments suffer from "two fatal flaws." Id. at 9. First, they assert that the Appellees "incorrectly assume that any material submitted in support of an application for temporary admission must be verified – but the plain language of Rule 3(2) refutes this position," noting that "the very first paragraph of Rule 3(2)(a) imposes a 'good cause' requirement that is not linked or cross-referenced to subsections (vi) or (vii) of the verified-petition requirement of Rule 3(2)(a)(4) . . . ." Id. at 9-10. Second, the Appellants assert that the Appellees "commit the same logical error that

---

[6] The Appellees also make a number of arguments for the proposition that the Appellants failed to demonstrate good cause for their Attorneys to gain *pro hac vice* admission. Because we hold that Rule 3(2)(a) did not require the Appellants to make such a demonstration, we need not address these arguments.

Also, we note that the Appellees raise a number of arguments in their brief, in addition to the jurisdictional challenge already discussed above, for why this court should not reach the merits of the Appellants' claims. Because review of these arguments is aided by first discussing the meritorious issues raised by Appellants, we will discuss them following our discussion of the Appellants' claims.

plagued the trial court when it effectively treated the five examples of good cause set forth in Rule 3(2)(a)(4)(vii) as independently-applicable requirements, each of which had to be demonstrated before a petition for temporary admission could be granted." Id. at 9. The Appellants note that "[e]ven if the five examples of good cause set forth in Rule 3(2)(a)(4)(vii) . . . applied, the rule is clear on its face that '[a] demonstration that good cause exists for the appearance shall include *at least one* of the following.'" Id. at 10.

## ANALYSIS AND DECISION

We begin with the Appellants' arguments regarding whether Local Rule 5(C) should be declared void as running afoul of Ind. Admission and Discipline Rule 3(2)(a) or whether the court erred in interpreting the local rule. As noted, the September 9 Order states in relevant part:

> 5. A temporary admission of an out-of-state lawyer pursuant to Admission and Discipline Rule 3(2) is within the discretion of the trial court, State ex rel Ind. Supreme Court Disciplinary Comm'n v. Farmer, 978 N.E.2d 409 (Ind. 2012), Matter of Fieger, 887 N.E.2d 87, 90 (Ind. 2008). However, in Lake County, this discretion is tempered by Lake County Local Rule 5(C) under which there is a presumption that an attorney not licensed in Indiana is not permitted to practice before the Lake Superior Court.

> \* \* \* \* \*

> 9. Even assuming that the plaintiffs have shown good cause to admit these attorneys because of their specialized skills, the *pro hac vice* petitioner must overcome the presumption under Lake County Local Rule 5(C) that an attorney not licensed in Indiana is not permitted to practice before it. As stated above, the Court is not persuaded that the plaintiffs cannot locate attorneys licensed in the State of Indiana that have expertise in the field of franchise law.

Appellants' Appendix at 17-18. Thus, the trial court ruled that, regardless of the dictates of Rule 3(2)(a), attorneys licensed in the State of Indiana could be located with the

16

relevant expertise and that accordingly the "presumption" contained in Local Rule 5(C) had not been overcome.

Indiana trial courts may establish local rules for their own governance as long as the local rules do not conflict with the rules established by the Indiana Supreme Court or by statute." Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 645-646 (Ind. 2012); see also Ind. Code § 34-8-1-4 ("Other Indiana Courts may establish rules for their own government, supplementary to and not conflicting with the rules prescribed by the supreme court or any statute."). The Court specifically authorizes the making and amending of local rules in Ind. Trial Rule 81(A), which states: "Courts may regulate local court and administrative district practice by adopting and amending in accordance with this Rule local and administrative district rules not inconsistent with–and not duplicative of–these Rules of Trial Procedure or other Rules of the Indiana Supreme Court." "As a general matter, local rules are procedural and 'are intended to standardize the practice within that court, to facilitate the effective flow of information, and to enable the court to rule on the merits of the case.'" Gill, 970 N.E.2d at 646 (quoting Meredith v. State, 679 N.E.2d 1309, 1310 (Ind. 1997)). However, the rules of procedure promulgated by the Court "are binding on all Indiana courts, and no court 'can circumvent the rules and thereby avoid their application' by promulgating an inconsistent local rule." Spudich v. N. Ind. Pub. Serv. Co., 745 N.E.2d 281, 286 (Ind. Ct. App. 2001) (quoting Armstrong, 447 N.E.2d at 1154 (quoting In re Estate of Moore, 155 Ind. App. 92, 96, 291 N.E.2d 566, 568 (1973))), reh'g denied, trans. denied. "A local rule which is inconsistent with the Trial Rules is deemed to be without force and effect." Id.

17

In Spudich, we noted that the Court first articulated a test for determining when a procedural rule enacted by statute is inconsistent with the trial rules in State v. Bridenhager, 257 Ind. 699, 279 N.E.2d 794 (1972), reh'g denied, as follows:

> To be "in conflict" with our rules . . . , it is not necessary that the statutory rules be in direct opposition to our rule, so that but one could stand per se. It is only required that they be incompatible to the extent that both could not apply in a given situation.

Id. at 286 (quoting Bridenhager, 257 Ind. at 704, 279 N.E.2d at 796). Then, in Armstrong, "this court held that the same test would apply to a local rule alleged to be inconsistent with the trial rules." Id. (citing Armstrong, 447 N.E.2d at 1154). The Spudich court discussed previous applications of this test as follows:

> [I]n Armstrong, we held that a local rule which provided that "[a]ll [civil] cases . . . shall be tried by a six (6) person jury" was in conflict with Trial Rule 48, which provided at that time that "[t]he parties may stipulate that the jury shall consist of any number less than twelve." [447 N.E.2d at 1154.] The local rule was in conflict with the Trial Rule because "a rule which permits stipulations of any number less than twelve makes little or no sense unless one assumes that, in the absence of a stipulation, the jury would consist of twelve." Id. See also Lies v. Ortho Pharmaceutical Corp., 259 Ind. 192, 286 N.E.2d 170, 173 (1972) (holding that a local rule requiring counsel to give a written "reminder" to the trial judge five days prior to the expiration of his time for ruling before moving to withdraw the case from that trial judge pursuant to Trial Rule 53.1 is in conflict with Trial Rule 53.1 because the local rule "purports to attach a condition to its application."); In re the Marriage of Murray, 460 N.E.2d 1023, 1027 (Ind. Ct. App. 1984) (holding that a local rule which required Trial Rule 12(B) motions to dismiss to be accompanied by a memorandum in support thereof or be deemed stricken is in conflict with Trial Rule 12(B) because the local rule is "an improper impingement" on motions made pursuant to the Trial Rule, which requires no such memorandum); Midwest Natural Gas Corp. v. Locke Stove Co., Inc., 435 N.E.2d 85, 87 (Ind. Ct. App. 1982) (holding that a local rule which provided that all motions were considered submitted for ruling without a hearing unless a hearing was requested by separate motion is in conflict with Trial Rule 56(C) which provides that a trial court "shall conduct a hearing" on a motion for summary judgment).

Id. at 286-287 (footnote omitted).

In Spudich, plaintiff Spudich suffered an electrical injury and filed a complaint for damages against the power company. Id. at 285. The power company filed a motion for summary judgment, Spudich filed his response, and the power company "filed a motion for extension of time to file a reply to the summary judgment, which the trial court granted that same day." Id. Spudich filed a motion to set aside the order granting additional time and later moved to strike the reply. Id. The trial court denied Spudich's motion to strike and granted summary judgment. Id. In so holding, the court relied upon Local Rule 4 of the Lake County Rules of Civil Procedure, which provides that:

> All motions filed pursuant to Trial Rules 12 and 56 shall be accompanied by a separate supporting brief. An adverse party shall have thirty (30) days after service of the initial brief in which to serve and file an answer brief, and the moving party shall have ten (10) days after service of the answer brief in which to serve and file a reply brief.

Id. at 285-286. Spudich argued that the local rule was inconsistent with Ind. Trial Rule 56 and should be declared void, specifically asserting "that because Trial Rule 56 does not specifically provide for the filing of reply briefs on summary judgment, Local Rule 4 is improper and should be declared void and of no effect." Id. at 286. The power company responded that Trial Rule 56 is silent on the subject of reply briefs and that accordingly the two rules cannot be inconsistent. Id.

On appeal, this court agreed with the power company, holding that the local rule was not incompatible with Ind. Trial Rule 56. Id. at 287. The court observed that although the local rule "expressly provides for the filing of a reply brief on a motion for summary judgment," Ind. Trial Rule 56 "neither expressly permits nor precludes such a

19

reply brief." Id. The court went on to note that Trial Rule 56 "*does*, however, provide for affidavits submitted in support or in opposition to summary judgment to be supplemented or opposed by depositions, answers to interrogatories, and further affidavits," that "[c]learly, additional evidence after the initial filings is contemplated by the Trial Rule, and that the Local Rule provides a mechanism for filing that evidence is not inconsistent with the Trial Rule." Id. The court also observed case law demonstrating that "[t]he practice of filing a reply brief on summary judgment is not unique to Lake County." Id.

We find that the above test applies with equal force to a local rule alleged to be in conflict with Indiana's Admission and Discipline Rules. Thus, in order to determine whether Local Rule 5(C) is "in conflict" with Rule 3(2)(a), we must judge whether both rules could not apply to a given situation. In that regard, we do not believe Local Rule 5(C) to be in conflict with Rule 3(2)(a). Rule 3(2)(a) permits members of a bar of another state to appear in a particular case or proceeding "only if" the court determines that good cause for the appearance exists and that the attorney demonstrates that the conditions of subparagraphs (1)-(4) are met. Local Rule 5(C) states simply that persons not members of the Indiana Bar "shall not generally be permitted to practice in the Civil Division of the Lake County Court System," that they may be permitted to appear "for a specifically limited purpose and time," and that in order to do so they must submit a motion "strictly comply[ing]" with Rule 3(2)(a). Thus, we find that Local Rule 5(C) merely directs counsel to the applicable rule governing *pro hac vice* admission, Rule 3(2).

However, our discussion does not end there, because here the trial court found that the language in Local 5(C) that "[a] person not a member of the Bar of the State of Indiana shall not generally be permitted to practice in the Civil Division of the Lake County Court System" to contain a presumption against allowing *pro hac vice* admissions constraining the court's discretion granted by Rule 3(2)(a). The court in its September 9 Order concluded that Local Rule 5(C) therefore "tempered" the discretion granted to it by Rule 3(2)(a). To the extent the court so concluded, we find that it misinterpreted Local Rule 5(C).

As noted by the Appellants, the Indiana Supreme Court in In re Fletcher declared that allowing "appearances in one state by an attorney regularly admitted and licensed to practice in another state are *generally permitted as a matter of comity*" and that the relevant rule is Rule 3(2). 655 N.E.2d at 59 n.1 (emphasis added). Black's Law Dictionary defines "comity" as "[a] practice among political entities . . . involving esp. mutual recognition of legislative, executive, and judicial acts." BLACK'S LAW DICTIONARY 324 (10th ed. 2014). Put another way, other states generally allow Indiana attorneys to practice *pro hac vice*, and similarly, members of another state's bar are generally allowed, assuming the requirements of Rule 3(2) are met, to practice law in Indiana on a case-by-case basis. Again, we interpret the provision of Local Rule 5(C) that members of another state's bar "shall not generally be permitted to practice" in the Lake County Court System to simply mean that such attorneys must seek *pro hac vice* admission in accordance with Rule 3(2)(a). Indeed, if Local Rule 5(C) were to contain a

presumption against allowing members of another state's bar to practice *pro hac vice*, then it would be "in conflict" with Rule 3(2)(a).

"An abuse of discretion occurs when the trial court misinterprets the law." Econ. Freedom Fund, 959 N.E.2d at 800. Thus, the court in this case abused its discretion when it concluded that Local Rule 5(C) contained a presumption against *pro hac vice* admission and "tempered" its discretion to admit the Attorneys. As noted, the Appellants request that, rather than simply remanding, we order the *pro hac vice* admission of the Attorneys. Before addressing this argument, however, and recognizing that there is apparent confusion regarding the requirements of Rule 3(2)(a), we address the parties' arguments regarding the "good cause" determination contained in the rule.

Prior to reciting subparagraphs (1)-(4), Rule 3(2)(a) states that a court "in the exercise of discretion" may permit a member of another state's bar "to appear in a particular case or proceeding[] only if the court . . . determines that there is good cause" and that the conditions listed in subparagraphs (1)-(4) are met. Subparagraph (4) requires that the attorney file a verified petition setting forth various information, including the attorney's residential and office addresses and contact information, the various jurisdictions in which the attorney has ever been licensed to practice law, that said attorney is currently a member in good standing in all such jurisdictions, that the attorney has never been suspended or disbarred as a result of a disciplinary charge or offer an explanation for why the court should grant temporary admission notwithstanding such disciplinary history, and that no disciplinary proceeding is currently pending or else specify the jurisdiction, the charges, and the investigating body's address for such

charges. The attorney must further state in the verified petition that he or she has read and will be bound by the rules of professional conduct and consents to the jurisdiction of the Indiana Supreme Court and the Disciplinary Commission and that the attorney has paid a registration fee to the Indiana Supreme Court in accordance with Subparagraph (a)(3). In addition, Subparagraph (4) lists the following requirements for the verified petition:

> (vi) A list of all cases and proceedings, including caption and case number, in which either the attorney, or any member of a firm with which the attorney is currently affiliated, has appeared in any court or administrative agency of this state during the last five (5) years by temporary admission.

> (vii) Absent good cause, repeated appearances by any person or by members of a single law firm pursuant to this rule shall be cause for denial of the petition. A demonstration that good cause exists for the appearance shall include at least one of the following:
>> (a) the cause in which the attorney seeks admission involves a complex field of law in which the attorney has special expertise,
>> (b) there has been an attorney-client relationship with the client for an extended period of time,
>> (c) there is a lack of local counsel with adequate expertise in the field involved,
>> (d) the cause presents questions of law involving the law of the foreign jurisdiction in which the applicant is licensed, or
>> (e) such other reason similar to those set forth in this subsection as would present good cause for the temporary admission.

As noted above, the Appellees posit that the five subparts listed in Rule 3(2)(a)(4)(vii) for "demonstrat[ing] that good cause exists for the appearance" are to be used for helping the court make its good cause determination required in the text of Section (a) itself. The Appellees argue that the Petitions did not contain verified

information relating to the requirements listed in Rule 3(2)(a)(4)(vii) and are therefore defective to admit the Attorneys. The Appellants counter that Rule 3(2)(a)(4)(vii) is tied specifically to the preceding Rule 3(2)(a)(4)(vi) regarding previous appearances in an Indiana court in the past five years and that Rule 3(2)(a)(4)(vii) need only be addressed when an attorney or law firm has made "repeated appearances" in an Indiana court.

We find that subparts (a)-(e) listed in Rule 3(2)(a)(4)(vii) are not meant to inform the court's *determination* that there is good cause for allowing *pro hac vice* admission. Rather, as suggested by the Appellants, Rule 3(2)(a)(4)(vii) lists ways in which an attorney may *demonstrate* that good cause is present for allowing *pro hac vice* admission for instances in which such admission would constitute a "repeated appearance," which is disfavored by the rule. Had the Attorneys previously sought *pro hac vice* admission in Indiana and listed such previous appearances in their Petitions pursuant to Rule 3(2)(a)(4)(vi), they would be required to demonstrate good cause under Rule 3(2)(a)(4)(vii). This more stringent and specific good cause requirement furthers Indiana's interest in maintaining the standard of its bar and preventing attempts to circumvent the bar-examination process. Here, however, neither the Attorneys applying for *pro hac vice* admission, nor any member of the law firm each attorney is associated with, has appeared in an Indiana court in the past five years, and accordingly they need not include in their Petitions verified information to demonstrate that good cause is present for temporary admission pursuant to Rule 3(2)(a)(4)(vii).

We base our interpretation on the fact that Rule 3(2)(a)(4)(vii) immediately follows Rule 3(2)(a)(4)(vi), which asks the attorney applying for *pro hac vice* admission

24

to list his or her contact with the Indiana court system during the past five years. Rule 3(2)(a)(4)(vii) then begins "[a]bsent good cause, repeated appearances by any person or by members of a single law firm pursuant to this rule shall be cause for denial of the petition" and states how good cause may be *demonstrated by the attorney*. It would be illogical to include such a statement in Rule 3(2)(a)(4)(vii) if subparts (a)-(e) are meant to inform the trial court's *determination* of good cause it is required to make pursuant to the initial language of Rule (3)(2)(a). Put another way, the Appellees' argument reduces the two sentences of Rule 3(2)(a)(4)(vii) preceding subparts (a)-(e) to non-sequiturs which we find to be an illogical interpretation.[7] See Humphrey v. Christopher, 692 N.E.2d 932, 934 (Ind. Ct. App. 1998) (holding that a court will not interpret a rule of court in a manner which produces an absurd result) (citing Boushehry v. State, 648 N.E.2d 1174, 1179 (Ind. Ct. App. 1995) (holding that statutes must be construed so as to prevent an absurd result), reh'g denied); see also City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind.

---

[7] Again, the Indiana Supreme Court in In re Fletcher observed that *pro hac vice* admission was "generally permitted as a matter of comity . . . ." 655 N.E.2d at 59 n.1. The purpose of Rule 3(2)(a)(4)(vii) is to limit *pro hac vice* admission where the attorney (or another member of the law firm with which the attorney is affiliated) petitioning for admission has previously been admitted to practice in Indiana. Rule 3(2)(a) requires the court to make a determination of good cause in all cases. If the attorney in a verified petition were required to demonstrate good cause pursuant to Rule 3(2)(a)(4)(vii)(a)-(e), even when the attorney has not made repeated appearances in Indiana, the first sentence of Rule 3(2)(a)(4)(vii) that "[a]bsent good cause, repeated appearances by any person or by members of a single law firm pursuant to this rule shall be cause for denial of the petition" would be rendered meaningless. See City of Carmel, 865 N.E.2d at 618 ("To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute.").

Further, although not applicable to the Attorneys in this case, we note that Rule 3(2)(a)(4)(vii)(a)-(e) is not exhaustive, and courts are not limited to those subparts when reviewing repeat temporary-admission petitions. Rule 3(2)(a) requires a court to determine that there is good cause for temporary admission, and this general good-cause provision applies to all verified petitions. It also grants our courts discretion to determine when temporary admission is appropriate. In doing so, courts may consider other factors, such as the number of times an attorney has sought temporary admission. Courts considering repeat petitions may also balance the examples found in subparts (a) through (e) against one another, as the court did here.

2007) (stating that courts will not presume that the Legislature intended statutory language to be applied illogically or in a way that would bring about an absurd result); Hardley v. State, 893 N.E.2d 1140, 1146 (Ind. Ct. App. 2008) (declining to apply a post-conviction rule in a way which would lead to an absurd result), trans. granted, aff'd, 905 N.E.2d 399 (Ind. 2009).

With this interpretation of Rule 3(2)(a) in mind, we turn to a final argument by the Appellants that this court should order the temporary admission of the Attorneys, who assert that further "[e]longating the process will simply add to the injury already occurring." Appellants' Brief at 21. We observe that this issue will recur on remand, and accordingly it is appropriate that we address it here. See, e.g., Palmer v. Sales, 995 N.E.2d 1073, 1078-1080 (Ind. Ct. App. 2013) (observing that the issue of whether to transfer the small claims court case to the plenary docket and set it for a jury trial would recur on remand and that it would accordingly address the issue, and remanding with instructions that the case be transferred to the plenary docket).

The Petitions filed on behalf of the Attorneys contained the requisite information mandated by Rule 3(2)(a). For instance, the verified application filed on behalf of attorney Michael Dady states, in Paragraph 1, that he seeks to represent the Appellants. In Paragraph 2, Dady's petition notes that he is associated with Local Counsel, whose name is James Groves, Paragraph 3 notes that he is not a resident or regularly employed in the State of Indiana, Paragraph 4 states his home Minnesota address, Paragraph 5 states his office address and contact information, and Paragraph 6 states the various jurisdictions in which he is licensed to practice law and is a member in good standing,

26

along with the dates in which he was admitted to each jurisdiction. Paragraphs 7 and 8 note that he has never been disbarred and that there are no disciplinary proceedings pending against him in any jurisdiction. Paragraph 9 states that Attorney Dady had not, within the past five years, applied for temporary admission to any Indiana court, nor had any attorneys currently affiliated with his law firm. Paragraph 11 stated that he read and agreed to be bound by the Indiana Rules of Professional Conduct, and Paragraph 12 noted that he paid the $145.00 application fee.

The other Petitions are similar to Dady's petition. Importantly, each of the Petitions states that the out of state attorney had not applied for temporary admission to any Indiana court in the past five years, and thus none of the Attorneys were attempting to apply for a "repeated appearance[]." Thus, we find that the Petitions complied with subparagraphs (1)-(4) of Rule 3(2)(a).

As discussed above, ordinarily Rule 3(2)(a) leaves it to the trial court's discretion to determine whether good cause exists to admit an attorney *pro hac vice*. In this instance, however, and recognizing that the Appellees do not challenge the Appellants' request that we make this determination, we find that good cause exists and remand with instructions for the court to grant the Petitions. The Appellants in this matter are all located outside of Indiana, and they hired the Attorneys to represent them in this matter. The court noted in its September 9 Order that the Attorneys "have specialized knowledge regarding franchise disputes, which is a large part of the subject matter of this case, and [the Appellants] wish to avail themselves of this specialized knowledge to assist them in

27

prosecuting their case." Appellants' Appendix at 18. This is sufficient to find good cause.

Finally, having concluded that the court erred in denying the Petitions, we must briefly address an argument raised by the Appellees why, in addition to the jurisdictional argument above, this court should not reach the merits of the Appellants' claims. Specifically, the Appellees argue that the legal issues raised by the Appellants based on Ind. Trial Rule 81 and the Privileges and Immunities Clause are waived because they were not presented to the trial court prior to the September 9 Order.[8] The Appellants in their reply brief respond to the Appellees' argument by stating that they "could not have expected that the trial court would conclude that Local Rule 5(C) 'tempers' . . . the discretion of a court considering an out-of-state lawyer's petition for temporary

---

[8] The Appellees' Brief contains other, independent arguments for the proposition that we should not reach the merits of the Appellants' appeal. First, the Appellees maintain that certain fact-based arguments made by the Appellants on appeal were not properly presented at the trial court level and are therefore waived. Specifically, the Appellees argue that, following the Appellants' initial Motion to Accept, although the Appellants verified the Petitions "and provided some additional information, they still did not include any demonstration of required 'good cause' which alone could allow the trial court to permit the lawyers to appear without being licensed to practice in Indiana." Appellees' Brief at 16. The Appellees further suggest that to the extent the Appellants "supplied some information on the 'good cause' requirement" in their Response filed on June 20, 2013, "that information could not provide a basis for finding good cause[] because [Appellants] did not verify that information as the Rule requires." Id. at 16-17. The Appellees also argue that it was only when the Appellants filed their Motion to Reconsider that they "submitted various materials . . . intended to show prejudice if the [Attorneys] were not temporarily admitted," that such materials were available prior to the court's September 9 Order, and that accordingly they "provide no basis for reversing the trial court's exercise of its discretion to deny temporary admission." Id. at 17. However, because the underlying premise of the Appellees' argument is based upon an erroneous interpretation of Rule 3(2)(a)'s good cause determination made by the trial court, we need not address this argument.

The Appellees further argue that the issues presented by the Appellants are not within the scope of the interlocutory appeal, noting that the trial court certified its September 9 Order "and only that Order." Id. at 18. They note that the Motion to Vacate and Motion to Reconsider filed on September 26, 2013 were deemed denied and the Appellants "never obtained certification from the trial court to request immediate appeal of the disposition" of these motions. Id. Our opinion today addresses only arguments made with respect to the September 9 Order. Accordingly, we need not address this argument by the Appellees.

admission, and thus would have had no reason to present" such arguments. Appellants' Reply Brief at 3. We agree with the Appellants that they could not have anticipated that the trial court would misinterpret Local Rule 5(C) and identify a presumption against *pro hac vice* admission, and accordingly they did not waive their argument on appeal.

CONCLUSION

For the foregoing reasons, we reverse the court's September 9 Order, and we remand with instructions to grant the Attorneys *pro hac vice* admission.

Reversed and remanded with instructions.

VAIDIK, C.J., and NAJAM, J., concur.